60 Cal.Rptr.3d 559 (2007)
151 Cal.App.4th 1029
Sharon D. DINA et al., Plaintiffs and Appellants,
v.
The PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION, Defendant and Respondent.
No. B190432.
Court of Appeal of California, Second District, Division Two.
June 5, 2007.
*563 Law Offices of Michael B. Montgomery, Michael B. Montgomery, El Monte; Law Offices of Edmund C. Hoy and Edmund C. Hoy, Arcadia, for Plaintiffs and Appellants.
Bruce A. Behrens, Sacramento, Linda Cohen Harrel, Los Angeles, Paul R. Brown and Robert W. Vidor, for Defendant and Respondent.
DOI TODD, Acting P.J.
Appellants Sharon Dina and David and Joann Whiteley appeal from a judgment entered in favor of the People of the State of California acting by and through the Department of Transportation (Department). Appellants brought separate complaints alleging inverse condemnation, nuisance and negligence by reason of noise, vibrations, air pollution and property damage they claimed to have suffered as a result of the extension of the 1-210 Freeway adjacent to their residences. After the case had been pending for one and one-half years, the Department moved to dismiss pursuant to Code of Civil Procedure section 1260.040, which permits parties in an eminent domain proceeding to move for a ruling when "there is a dispute between plaintiff and defendant over an evidentiary or other legal issue affecting the determination of compensation...." (Code Civ. Proc., § 1260.040, subd. (a).)[1] The trial court granted the motion on the grounds that appellants failed to demonstrate by a preponderance of the evidence that their properties suffered peculiar and substantial damage or that the freeway construction or operation was unreasonable. Appellants contend that section 1260.040 does not allow the trial court to weigh evidence to summarily resolve an action and that substantial evidence does not support the trial court's resolution of the case.
We affirm. The language and legislative history of section 1260.040 permit a trial court to determine the legal issue of liability. In view of the summary nature of the procedure, we evaluate the evidence as we would on a motion for nonsuit, accepting it as true and viewing it in a light favorable to appellants. Applying this stringent standard of review, we conclude the trial court properly ruled that appellants could not maintain their causes of *564 action for inverse condemnation, nuisance and negligence.

FACTUAL AND PROCEDURAL BACKGROUND
Appellants own residential property in the City of La Verne (City). Between 1999 and 2002, the Department constructed an extension of the 1-210 Freeway in close proximity to appellants' property. According to appellants, as a result of that extension they experienced noise exceeding acceptable levels set by state and federal law, audible vibrations which were negatively affecting the properties' loadbearing beams and causing erosion beneath the properties' foundations, and increased levels of air pollution. In addition, they contended that their properties suffered from structural damage including subsidence, settling and cracks in the patio and garage floors.
Appellants filed their initial complaints in October 2003, alleging causes of action for inverse condemnation, nuisance and negligence against the Department and the City.[2] After demurrers by the Department and the City, appellants filed the operative second amended complaint on May 20, 2004, which alleged causes of action for inverse condemnation, nuisance and negligence against the Department only. The same day they filed a dismissal with prejudice as to the City. The Department filed its answer in June 2004, generally denying the complaint's allegations and asserting multiple affirmative defenses.
As relevant here, on March 25, 2005, the Department filed a motion to dismiss pursuant to section 1260.040 on the grounds that appellants' inverse condemnation claim lacked merit and that their nuisance and negligence claims were barred as a matter of law. The Department asserted in the motion that appellants' inverse condemnation cause of action failed for lack of evidence that appellants suffered any individualized or particularized detriment as a result of the freeway. The Department further asserted that governmental immunity barred the nuisance claim and that Government Code section 815 barred liability for a common law negligence claim. The Department attached several exhibits and expert declarations in support of the motion to dismiss.
More specifically, the Department submitted the declaration of Sanford Fidell, a psychologist specializing in the study of environmental noise effects on individuals and communities. After monitoring the noise levels at the subject properties, Fidell concluded that the 16-foot high noise barrier that was erected along each of the properties "is performing as expected to reduce noise levels at these properties; and that the noise levels in plaintiffs' backyards are characteristic of those which can be reasonably expected according to Chapter 1100 (`Highway Traffic Noise Abatement') of the 1995 CalTrans Highway Design Manual." He further concluded that "the Plaintiffs' homes are not exposed to more highway traffic noise than those of many other similarly situated homes." Also relating to appellants' excessive noise claim, the Department offered a noise attenuation report that was prepared in connection with the final environmental impact report (EIR) for the freeway extension.
With respect to claims of erosion and structural damage, the Department submitted the declaration of engineering geologist James Ashby, who inspected the subject properties and opined "that cracking *565 of these rear patio slabs was caused by the sub-grade settlement of non-compacted/non-engineered fill soils via hydroconsolidation, and was exacerbated by the lack of adequate placement of reinforcement (both presence and position within the slab itself), and generally represent normal signs of aging, and wear and tear. The construction related with the nearby freeway is simply too far away to have adversely affected these patio slabs, or to have caused their settlement." The Ashby declaration summarized: "[T]hese homes do not evidence those types of distress which indicate or in any way suggest that they have suffered any physical damage related to geotechnically related phenomena such as soil subsidence and/or expansive soils as a direct or indirect result of freeway construction." It also submitted the declaration of registered structural engineer Gregg Brandow, who examined two of the subject properties and on that basis opined that the cracks he observed were cosmetic in nature and neither threatened the structural integrity of the homes nor required structural repairs or strengthening.
Appellants opposed the motion. Though the focus of the opposition to the motion to dismiss was on the procedural impropriety of the motion, appellants attached their own reports in an effort to challenge the factual bases for that motion. They submitted a draft noise impact assessment prepared for the City of Claremont, dated January 9, 2004, which indicated that noise levels at various points along the 20-mile extension of the 1-210 Freeway exceeded 70 decibels at certain times and that these levels could be abated by repaving, enforcing speed and weight restrictions, and improving existing sound walls. They also submitted a letter report from George Hernandez, who stated he inspected the subject properties, observed major cracks in the backyard concrete slabs and opined that the damages "were the cause of an event that happened recently." Though the letter bore the caption "Health Care Engineering Services," it did not identify Hernandez's education, occupation or experience. They also submitted a newspaper article entitled "Noise still annoys."
At an April 25, 2005 hearing, the trial court granted the motion to dismiss as to the negligence claim. With respect to dismissal of the inverse condemnation and nuisance claims, the trial court set a briefing schedule and directed the parties to file supplemental briefs and declarations regarding "the issues of noise, dust and causation issues related to the cracking of plaintiffs' patios" and set a further hearing for June 20, 2005.
Appellants submitted expert and their own declarations, together with reports, photographs and drawings, in response to the court order. Addressing noise impact, they submitted a staff report prepared for the City of La Verne City Council (City Council) concerning a freeway noise impact assessment prepared by Urban Crossroads. That assessment indicated that noise levels resulting from the freeway were greater than anticipated by the EIR and recommended repaving as a means to mitigate the problem. City Council minutes also submitted indicated that at a March 15, 2004 meeting the City Council directed staff to look into several possible means of mitigation and noted that there were "far more pervasive problems that need to be addressed."
With respect to the issue of air pollution, appellants submitted a September 2001 air monitoring study at Felton and Lloyde schools prepared by the South Coast Air Quality Management District. According to that study, samples taken at the school locations indicated that levels of toxic air contaminants were at or below Basin-wide *566 average levels, with the exception of carbonyls compounds which were slightly above the Basin-wide average. They also submitted a broader March 2000 multiple air toxics exposure study of the South Coast Air Basin.
To address the issue of structural damage, they submitted the declaration of registered civil engineer Faustin Gonzalez, who participated in a site inspection of the subject properties in May 2005. He observed cracks in the backyard concrete patios as well as hairline cracks in portions of the houses' exterior and interior. He also discussed the condition of the properties with the homeowners, and on the basis of his inspection and those discussions rendered the following opinion: "The construction which was done within the homeowners property, the sound wall construction, was done with very large construction equipment appropriate to freeway construction but improper for use in the immediate vicinity of homes. The reckless use of this heavy equipment to bang and force out large and heavy steel shoring doubtless caused the patio cracks in these homes. They weren't there before this occurrence and according to the owners had been fine for 20 years prior to the freeway. [¶] As a result of my observation and analysis, it is my considered professional opinion that all of the five homes belonging to the plaintiffs and all of the rear yards for these homes exhibit clear and indisputable evidence of recent differential settlement and impact movement almost certainly caused by the prolonged and on-going construction of the 210 freeway practically on top of the homes." Gonzalez also challenged Ashby's opinion that the floor slabs were level in that they were not out of level by more than one inch in 20 feet by noting that Ashby did not know how level the floors were when originally constructed.
On the basis of their personal observations and experiences, certain homeowners declared that the expert opinions submitted by the Department were inaccurate. Appellants additionally submitted a letter from an associate real estate broker, David Brighton, who opined that the 1-210 Freeway extension negatively affected the value and salability of homes next to the freeway.
In connection with its reply, the Department submitted the declaration of Hanns Baumann, a registered civil engineer and licensed structural engineer. Accompanied by the homeowners, he inspected the five subject properties in May 2005 and reviewed water manometer surveys conducted on the slab portion of each home; he thereafter opined:. "[Biased upon my structural engineering expertise and experience, combined with my on-site inspections, and in view of the vibration monitoring results, it [is] my professional opinion that there is no evidence of structural damage caused by vibration from construction or traffic. In addition, there is no ongoing potential source of vibration of sufficient intensity which could affect the structural integrity of these five homes. The minor cracks that I did see were everywhere cosmetic in nature, to be expected in homes of similar construction and vintage, ARE NOT a threat to the structural integrity of the buildings."
The Department also provided a supplemental declaration from geologist Ashby, who supervised further inspections of the properties in May and June 2005. Ashby concluded that none of the properties exhibited any evidence of having been adversely affected by construction or traffic-related vibration from the 1-210 Freeway. Rather, he concluded that the cracked patio slabs were the result of improper reinforcement, inadequate concrete mixtures and varying thickness within each slab, *567 and/or inadequately compacted and expansive soil beneath the slabs.
In June 2005, the trial court continued the hearing because appellants asserted that there was outstanding discovery that would bear on the issues raised by the motions. Thereafter, the parties submitted supplemental expert declarations and photographs as well as supplemental points and authorities. More specifically, appellants submitted a letter denying a claim brought by one of the homeowners against Yeager Construction Company, which stated that Yeager performed its freeway construction operations properly and according to plans and that, therefore, "we believe these damages to be the result of an improper design of the 210 highway." They also offered discovery responses showing that the Department declined to produce any documents relating to Ashby until his deposition was noticed pursuant to Code of Civil Procedure section 2034.
At the July 21, 2005 hearing, the trial court issued a tentative ruling granting the motion. Appellants challenged the procedural aspects of the motion, arguing section 1260.040 was limited to the resolution of discrete legal issues and did not permit the court to weigh competing evidence in order to resolve liability. The trial court disagreed, pointing out that, except for the amount of compensation, all elements of an eminent domain or inverse condemnation claim involve legal issues for the trial court's resolution. The trial court ruled that appellants had failed to meet their burden to demonstrate by a preponderance of the evidence that the elements of peculiar and substantial damage or unreasonable operation of the freeway necessary to support their claim. It granted the Department's motion and directed the Department to prepare an order to that effect.
On October 5, 2005, the trial court filed its order granting the Department's motion to dismiss in its entirety. In the order, the trial court expressly rejected appellants' argument that section 1260.040 was limited to the resolution of evidentiary issues and did not permit the court to resolve the legal issues raised by the motion. The trial court attached and incorporated by reference its analysis of the legislative history of section 1260.040. On the merits of appellant's inverse condemnation claim, the trial court ruled that "plaintiffs have clearly failed to demonstrate by a preponderance of the evidence that their properties suffered from `peculiar and substantial damage' from the 210 freeway" involving vibrations/subsidence, noise or dust/pollution. The trial court found that the weight of the evidence on all issues was in the Department's favor. With respect to the nuisance claim, it found that appellants failed to demonstrate that the freeway construction or operation was improper or unreasonable, and that they thus failed to overcome the immunity afforded by Civil Code section 3482. Within the order, the trial court further ruled that appellants' supplemental letters and photographs were not properly authenticated, that Hernandez's letter was hearsay and lacked foundation, that Hernandez's declaration lacked foundation and specificity, and that Gonzalez's declaration lacked foundation. As a result of its findings, the trial court ordered the complaint dismissed with prejudice.
Appellants filed an objection to the trial court's order, asserting that they were denied their right to a trial. The trial court entered judgment in accordance with the order of dismissal, and this appeal followed.

DISCUSSION
Appellants challenge the judgment on the ground that section 1260.040 does not *568 authorize the trial court to resolve the entire action and, in particular, does not permit the trial court to weigh evidence in doing so. Appellants further contend that even if section 1260.040 can be employed in the manner utilized by the trial court, substantial evidence does not support the trial court's determination. We find no merit to these challenges.

I. The Trial Court Properly Employed Code of Civil Procedure Section 1260.040.
Section 1260.040 provides: "(a) If there is a dispute between plaintiff and defendant over an evidentiary or other legal issue affecting the determination of compensation, either party, may move the court for a ruling on the issue. The motion shall be made not later than 60 days before commencement of trial on the issue of compensation. The motion shall be heard by the judge assigned for trial of the case, [¶] (b) Notwithstanding any other statute or rule of court governing the date of final offers and demands of the parties and the date of trial of an eminent domain proceeding, the court may postpone those dates for a period sufficient to enable the parties to engage in further proceedings before trial in response to its ruling on the motion, [¶] (c) This section supplements, and does not replace any other pretrial or trial procedure otherwise available to resolve an evidentiary or other legal issue affecting the determination of compensation." This provision applies to actions commenced on or after January 1, 2002. (Stats.2001, ch. 428 (Assem. Bill No. 237), 11.)
The trial court analyzed both the text and legislative history of section 1260.040 to conclude that the statute affords a manner of case disposition by motion, which encompasses the right to weigh evidence to adjudicate issues affecting compensation. It further reasoned that the statute comports with due process by providing the parties with requisite notice and an opportunity to be heard. The proper interpretation of a statute is a question of law which we review de novo. (Burden v. Snowden (1992) 2 Cal.4th 556, 562, 7 Cal. Rptr.2d 531, 828 P.2d 672.)

A. The Intent of Code of Civil Procedure Section 1260.040.
"The well-settled objective of statutory construction is to ascertain and effectuate legislative intent, giving the words of the statute their usual and ordinary meaning. When the statutory language is clear, we need go no further. If, however, the language supports more than one reasonable interpretation, we look to a variety of extrinsic aids, including the objects to be achieved, the evils to be remedied, legislative history, the statutory scheme of which the statute is a part, contemporaneous administrative construction, and questions of public policy. [Citation.]" (Moran v. Murtaugh Miller Meyer Nelson, LLP (2007) 40 Cal.4th 780, 783, 55 Cal.Rptr.3d, 112,152 P.3d 416.)
Section 1260.040 is among the statutes comprising part 3, title 7, chapter 8 of the Code of Civil Procedure, which is a comprehensive scheme designed to cover eminent domain proceedings.[3] (§ 1230.010 *569 et seq.) The statute permits either party to move for a ruling on "an evidentiary or other legal issue affecting the determination of compensation ...." (1260.040, subd. (a).) It is certainly reasonable to construe this language as permitting the trial court to adjudicate the question of the Department's liability for inverse condemnation. As the Department has repeatedly posited throughout these proceedings, "What could affect the determination of compensation more than whether or not the plaintiffs have a valid cause of action"? But it is equally reasonable to construe the statute as providing a more limited procedure, given that it is silent with respect to the trial court's ability to weigh evidence or enter judgment on the basis of its ruling on the evidentiary or legal issue. A statute is considered ambiguous if it is capable of two or more reasonable interpretations. (Hughes v. Board of Architectural Examiners (1998) 17 Cal.4th 763, 776, 72 Cal. Rptr.2d 624, 952 P.2d 641; In re John S. (2001) 88 Cal.App.4th 1140," 1144, 106 Cal. Rptr.2d 476.) In the event of an ambiguity, we must ascertain legislative intent by examining a variety of extrinsic aids, including the history and background of the statute, the statutory scheme of which the provision is a part and the apparent purpose of the statute. (Hughes v. Board of Architectural Examiners, supra, at p. 776, 72 Cal.Rptr.2d 624, 952 P.2d 641.)
The history and background of section 1260.040 provide some insight into legislative intent. (See In re John S., supra, 88 Cal.App.4th at p. 1144, fn. 2, 106 Cal. Rptr.2d 476 [legislative committee reports, bill reports, and other legislative records are appropriate sources from which to ascertain legislative intent].) Through the enactment of Assembly Bill No. 237 (Assem. Bill 237) in 2001, the Legislature added section 1260.040 to the Code of Civil Procedure. (Added by Stats.2001, ch. 428 (Assem. Bill No. 237), § 9.) The California Law Revision Commission sponsored Assem. Bill 237. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 237 (2001-2002 Reg. Sess.) as amended Aug. 28, 2001, p. 1.) It broadly "propose[d] in this recommendation a number of revisions of the law intended to facilitate resolution of eminent domain cases without the need for trial." (Cal. Law Revision Com., Recommendation: Early Disclosure of Valuation Data and Resolution of Issues in Eminent Domain (Oct.2000) 30 Cal. Law Revision Com. Rep. (2000) pp. 574-575 (Recommendation).) Acknowledging that existing statutes provided certain incentives for parties to resolve eminent domain actions without the need for trial, the Law Revision Commission sought to improve pretrial procedures for resolving legal disputes affecting valuation by recommending the addition of a general provision for early resolution of disputes over legal issues affecting valuation. (Recommendation at pp. 574, 586.) The only qualification expressed by the Law Revision Commission was that "[t]he procedure should be limited to resolution of legal issues that may affect compensation, such as what constitutes the larger parcel, or the probability of a zoning change; it should not be used to ascertain just compensation." (Recommendation at p. 586, fn. omitted.)
*570 Citing the Law Revision Commission's recommendation, the Senate Judiciary Committee described Assem. Bill 237 as "amending] eminent domain law to facilitate resolution of condemnation cases without trial." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 237 (2001-2002 Reg. Sess.) as amended May 31, 2001, p. 2.) With respect to the addition of section 1260.040, legislative analyses provided: "Existing law provides for the resolution by the court of disputes on matters of law, such as the plaintiffs right to take the subject property, prior to jury trial on the issue of just compensation. [¶] This bill would provide that, if the parties dispute an evidentiary or other legal issue affecting the determination of compensation, either party may move the court for a ruling on the issue no later than 60 days before trial. A court that issues a ruling on such a motion may postpone other statutory deadlines in the action for a period sufficient to enable the parties to engage in further proceedings in response to the court's ruling on the motion."[4] (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 237 (2001-2002 Reg. Sess.) as amended Aug. 28, 2001, p. 4; accord, Sen. Com. on Judiciary, Analysis of Assem. Bill No. 237 (2001-2002 Reg. Sess.).as amended May 31, 2001, pp. 4-5.)

B. Code of Civil Procedure Permits the Trial Court to Resolve by Motion the Legal Issue of Liability in an Inverse Condemnation Action.
Against this backdrop, we construe section 1260.040 to authorize the Department to move for a ruling on liability, as that was a legal issue affecting the determination of compensation. Legislative history demonstrates that Assem. Bill 237 was intended to "revise procedures in eminent domain proceedings." (See Sen. Com. on Judiciary, Cone, in Senate Amendments, Analysis of Assem. Bill No. 237 (2001-2002 Reg. Sess.) as amended Aug. 28, 2001, p. 1.) If section 1260.040 were construed in a limited fashion to apply only to preliminary matters preceding trial, then the statute would not constitute a revision, but rather, merely a restatement of existing procedures. (See § 1260.120 [permitting court to determine whether the plaintiff has the right to take in an eminent domain proceeding].) The Legislature added section 1260.040 to supplement existing procedures, and it was one of the provisions described under "Changes to Existing Law." (§ 1260.040, subd. (c); Sen. Com. on Judiciary, Analysis of Assem. Bill" No. 237 (2001-2002 Reg. Sess.) as amended May 31, 2001, pp. 2-5.) Because the Legislature expressly amended eminent domain law through the enactment of Assem. Bill 237, "we presume that this `"indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one."' [Citation.] `"Therefore, any material change in the language of the original act is presumed to indicate a change in legal rights."' [Citations.]" (Garrett v. Young (2003) 109 Cal.App.4th 1393, 1404-1405, 1 Cal.Rptr.3d 134.)
On the other hand, appellants' arguments as to why we should adopt a more *571 limited construction of section 1260.040 are contrary to legislative intent. Appellants contend that the statute cannot be construed to operate to terminate an action because it does not contain language suggesting that it was intended to allow the trial court to adjudicate liability or enter judgment. But neither does the statute contain any limiting language indicating that the resolution of an evidentiary or legal issue cannot dispose of an action. We will not read into the statute a restriction that is not there. (See Lewis v. Clarke (2003) 108 Cal.App.4th 563, 567, 133 Cal.Rptr.2d 749 ["We cannot insert what has been omitted, omit what has been inserted, or rewrite the statute to conform to a presumed intention that is not expressed"]; San Francisco Unified School Dist. v. San Francisco Classroom Teachers Assn. (1990) 222 Cal.App.3d 146, 149, 272 Cal.Rptr. 38 [same].) Section 1260.040 permits either party to move for a ruling on a legal issue affecting the determination of compensation and requires that the motion be brought before the judge assigned for trial of the case. (§ 1260.040, subd. (a).) "An application for an order is a motion." (§ 1003.) Here, the Department sought an order of dismissal on the ground that appellants' claims were legally without merit. Nothing in the language of section 1260.040 or its legislative history bars a party from seeking an order on a legal issue that disposes of an inverse condemnation action.
Appellants further contend that the trial court's ruling on the motion denied them their right to a jury trial. Article 1, section 19 of the California Constitution provides: "Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner." Construing this provision, the court in Hensler v. City of Glendale (1994) 8 Cal.4th 1, 15, 32 Cal. Rptr.2d 244, 876 P.2d 1043 clarified that "the right to jury trial applies in inverse condemnation actions, but that right is limited to the question of damages. [Citations.]" (Accord, San Diego Gas Electric Co. v. Superior Court (1996) 13 Cal.4th 893, 951, 55 Cal.Rptr.2d 724, 920 P.2d 669 ["There is no right to jury trial on the issue whether there has been a taking in the first instance"].) Even when the question of liability in an inverse condemnation proceeding involves the resolution of factual issues, there is no right to a jury trial. As unequivocally stated by the court in Marshall v. Department of Water Power (1990) 219 Cal.App.3d 1124, 1141, 268 Cal. Rptr. 559: "We hold that in an inverse condemnation proceeding, the parties have a right to a jury trial solely on the issue of compensation. All other determinations related to the inverse taking, whether purely factual or a mixture of factual and legal, are nonjury questions." Thus, the trial court's determination that appellants had not established a taking did not deprive them of any right to a jury trial.
Alternatively, appellants assert that, at a minimum, they were denied their right to a bench trial. In other contexts, appellate courts have been sympathetic to such a claim. For example, in Panico v. Truck Ins. Exchange (2001) 90 Cal. App.4th 1294, 1297, 109 Cal.Rptr.2d 638, the trial court issued a ruling from the bench in favor of an insurer on a bad faith claim on the basis of competing offers of proof. After noting that it had "seen a number of cases where trial judges have attempted to streamline trial proceedings by adjudicating a case from the bench based on offers of proof," the appellate court criticized the procedure "because the Court of Appeal must treat the case as if it were the product of a motion for nonsuit after an opening statement. [Citation.] *572 That means that all the inferences and conflicts in the evidence must be resolved, on appeal, in favor of the losing party, i.e., against the judgment. [Citation.]" (Id. at p. 1296, 109 Cal.Rptr.2d 638.) If the trial court had conducted a bench trial, then the judgment would have been subject to the usual presumptions and favorable inferences generally resulting from a trial court judgment. (Ibid.)
We agree with the Panico court's observations and conclude that while the absence of a bench trial on the issue of the Department's liability is not fatal to the judgment, it does affect our standard of review.[5] The procedure utilized by the trial court pursuant to section 1260.040 was akin to that in Stein-Brief Group, Inc. v. Home Indemnity Co. (1998) 65 Cal. App.4th 364, 76 Cal.Rptr.2d 3. There, the trial court ruled that an insurer owed no duty to defend after employing what the Court of Appeal characterized as "the unusual and unorthodox procedure" of receiving cross-motions in limine that essentially required the plaintiff to set forth the facts most favorable to its case, which it would presume true, and then entertaining legal arguments from both parties on the question of coverage. (Id at p. 369, 76 Cal. Rptr.2d 3.) The appellate court likened the procedure to a motion for nonsuit or demurrer to the evidence and reviewed the ruling as if it were a grant of nonsuit. (Ibid.; cf. Coshow v. City of Escondido (2005) 132 Cal.App.4th 687, 701-702, 34 Cal.Rptr.3d 19 [trial court properly exercised its inherent power over the proceedings by construing the motions in limine as a motion for judgment on the pleadings and dismissing the action on the ground that plaintiff could not state a cause of action]; Lucas v. County of Los Angeles (1996) 47 Cal.App.4th 277, 284-285, 54 Cal. Rptr.2d 655 [trial court had inherent power to entertain motion in limine and thereafter enter judgment in favor of the defendant, even though it had earlier denied summary judgment].)
"A court has inherent equity, supervisory and administrative powers, as well as inherent power to control litigation and conserve judicial resources. [Citation.] Courts can conduct hearings and formulate rules of procedure where justice so demands." (Lucas v. County of Los Angeles, supra, 47 Cal.App.4th at pp. 284-285, 54 Cal.Rptr.2d 655.) Here, the trial court implemented an appropriate procedure to determine the legal issues raised by the Department's motion in a manner consistent with the language and legislative purpose of section 1260.040. For this reason, we further reject appellants' argument that any pretrial disposition of their claims was limited to a motion for summary judgment. The procedural mechanism implemented by section 1260.040 expressly "supplements, and does not replace any other pretrial or trial procedure otherwise available to resolve an evidentiary or other legal issue affecting the determination of compensation." (§ 1260.040, subd. (c).) Moreover, a motion for summary judgment is not the exclusive means by which a trial court can consider evidence in resolving issues before trial. (See Cal. Rules of Court, rule 3.1112(b) ["Other papers may be filed in support of a motion, including declarations, exhibits, appendices, and other documents or pleadings"].)
In a related argument, appellants suggest that they should have at least had the opportunity to present additional evidence once they realized that the trial court intended to resolve the legal issue of liability. But the record indicates that the trial court expressly apprised appellants of the issues on which it intended to rule and *573 provided them with ample opportunity to present additional briefing and evidence. The case had been pending for over one year when the Department filed its motion to dismiss in March 2005. At the first hearing on that motion in April 2005, the trial court granted appellants' request for additional time to provide the court with information. The trial court issued a written order directing appellants to "file supplemental points and authorities and declarations only on the issue of noise, dust and causation issues related to the cracking of plaintiffs['] patios no later than May 25, 2005" and providing the Department with an opportunity to respond. In that order, the trial court also granted the motion on the third cause of action for negligence, thereby notifying appellants that it considered a motion brought pursuant to section 1260.040 an appropriate vehicle to resolve appellants' claims on the merits. At the next hearing on June 20, 2005, the trial court granted a further continuance which appellants had requested in order to receive the Department's outstanding responses to discovery requests. When the trial court ultimately heard the motion on July 21, 2005, the matter was scheduled for trial in one month. By that time, appellants should have assembled all their evidence, including expert witnesses, and obtained all relevant discovery from the Department. (See §§ 1258.020 [in an eminent domain action, absent a court order, each party has until 20 days before trial to obtain discovery from experts disclosed by the other party]; 1258.220, subd. (a) [in an eminent domain action, expert witness lists should be exchanged 90 days prior to commencement of trial].) On the basis of the record before us, we are unable to ascertain-nor have appellants informed us in their briefseither why appellants did not conduct statutorilypermitted discovery earlier or what additional evidence they were unable to obtain by the time of the hearing on the motion to dismiss.
In sum, the trial court adopted and implemented a construction of section 1260.040 that comports with the statute's language and overall statutory scheme, promotes its stated statutory purpose and is supported by legislative history. The trial court properly determined the legal issue of the Department's liability pursuant to the motion procedure afforded by section 1260.040.

II. The Trial Court Properly Resolved the Legal Issue of Liability By Concluding That Appellants' Evidence Was Insufficient to Support the Claims Alleged in the Complaint.
Appellants further assert that even if the trial court properly utilized section 1260.040 as a means to adjudicate liability, the judgment should be reversed because the evidence did not support the trial court's findings. To review this claim, we are guided by the standard of review set forth in Stein-Brief Group, Inc. v. Home Indemnity Co., supra, 65 Cal.App.4th at page 369, 76 Cal.Rptr.2d 3, where the court characterized the trial court's process of ruling on cross-motions in limine as being the equivalent of ruling on a motion for nonsuit. The court further reasoned: "Continuing the analogy of the procedure below to a nonsuit gives us guidance as to the standard of review to be applied on appeal. We `"must accept all facts asserted in the opening statement [or here, asserted in the best case scenario] as true and must indulge every legitimate inference which may be drawn from those facts. [Citations.].... [A nonsuit] can only be upheld on appeal if, after accepting all the asserted facts as true and indulging every legitimate inference in favor of plaintiff, it can be said those facts and inferences lead inexorably to the conclusion plaintiff cannot *574 establish an essential element of its cause of action...."` [Citations.]" (Ibid.; accord, Lombardo v. Huysentruyt (2001) 91 Cal.App.4th 656, 663-664, 110 Cal. Rptr.2d 691; Panico v. Truck Ins. Exchange, supra, 90 Cal.App.4th at p. 1296, 109 Cal.Rptr.2d 638.) Stated similarly, "[a] trial court may grant a nonsuit only when, disregarding conflicting evidence, viewing the record in the light most favorable to the plaintiff and indulging in every legitimate inference which may be drawn from the evidence, it determines there is no substantial evidence to support a judgment in the plaintiffs favor." (Edwards v. Centex Real Estate Corp. (1997) 53 Cal. App.4th 15, 28, 61 Cal.Rptr.2d 518.)
Even when we apply this stringent standard of review, we conclude that the trial court properly ruled that the admissible evidence offered by appellants was insufficient to support their claims for inverse condemnation, nuisance and negligence. In its order granting the Department's motion to dismiss, the trial court sustained a number of evidentiary objections to appellants' evidence. Aside from complaining that the entire proceeding was "simply unfair," appellants have not challenged the trial court's evidentiary rulings on appeal. Appellants' failure to do so constitutes a waiver of that issue on appeal. (E.g., Dieckmeyer v. Redevelopment Agency of Huntington Beach (2005) 127 Cal.App.4th 248, 260, 24 Cal.Rptr.3d 895; Interinsurance Exchange v. Collins (1994) 30 Cal.App.4th 1445, 1448, 37 Cal.Rptr.2d 126; Dills v. Redwoods Associates, Ltd. (1994) 28 Cal.App.4th 888, 890, fn. 1, 33 Cal.Rptr.2d 838.) Thus, while we must view the evidence in the light most favorable to appellants, we must necessarily limit our review to only the admissible evidence offered by appellants. (See Reyes v. Kosha (1998) 65 Cal.App.4th 451, 466, fn. 6, 76 Cal.Rptr.2d 457.)

A. Inverse Condemnation.
An inverse condemnation cause of action derives from article I, section 19 of the California Constitution, which states in relevant part: "Private property may be taken or damaged for public use only when just compensation ... has first been paid to, or into court for, the owner." As explained in Oliver v. AT&T Wireless Services (1999) 76 Cal. App.4th 521, 530, 90 Cal.Rptr.2d 491: "Property is `taken or damaged' within the meaning of article I, section 19 of the California Constitution, so as to give rise to a claim for inverse condemnation, when: (1) the property has been physically invaded in a tangible manner; (2) no physical invasion has occurred, but the property has been physically damaged; or (3) an intangible intrusion onto the property has occurred which has caused no damage to the property but places a burden on the property that is direct, substantial, and peculiar to the property itself. [Citations.]" The property owner has the burden of establishing that the public entity has, in fact, taken or damaged his or her property. (San Diego Gas Electric Co. v. Superior Court, supra, 13 Cal.4th at p. 940, 55 Cal.Rptr.2d 724, 920 P.2d 669.)
Here, appellants relied on the latter two theories in an effort to demonstrate that the Department had taken its property through the construction of the 1-210 Freeway extension. They contended that the freeway had caused physical damage to their property by compromising the homes' structural integrity and causing subsurface erosion, manifested by cracks in their patio slabs and homes. As evidence of this damage, they offered a letter from civil engineer Hernandez who opined only that the cracks he observed "were the cause of an event that happened recently." The trial court ruled that the letter was *575 hearsay and lacked any evidentiary proof in the record to support its contentions. Appellants also offered a sworn declaration from Gonzalez who opined: "The reckless use of this heavy equipment [during freeway construction] to bang and force out large and heavy steel shoring doubtless caused the patio cracks in these homes. They weren't there before this occurrence and according to the owners had been fine for 20 years prior to the freeway." The trial court ruled that the declaration "lacked any foundation for the opinions that were alleged in the declaration...."
Appellants failed to proffer any competent evidence that the construction and operation of the 1-210 Freeway caused physical damage to their property. "In order for liability in inverse condemnation to lie, a causal connection must exist between the defendant public entity's conduct and plaintiffs damages. [Citation.] The public use or improvement need not be the sole cause of the property damage. Liability in inverse condemnation may be shown where the public improvement was a substantial concurring cause of the damage. [Citation.] There must be a showing of `"a substantial cause-and-effect relationship excluding the probability that other forces alone produced the injury." [Citations.]' [Citation.]" (Ullery v. County of Contra Costa (1988) 202 Cal.App.3d 562, 572, 248 Cal.Rptr. 727.)
Neither Hernandez's letter nor Gonzalez's declaration established any causal connection between the cracking on appellants' property and the construction and maintenance of the freeway. As the trial court ruled, both opinions were based on assumptions of fact lacking evidentiary support. "A]n expert's opinion that something could be true if certain assumed facts are true, without any foundation for concluding those assumed facts exist in the case," is not probative of the issue to be determined. (Jennings v. Palomar Pomerado Health Systems, Inc. (2003) 114 Cal.App.4th 1108, 1117, 8 Cal. Rptr.3d 363.) Stated another way, "when an expert's opinion is purely conclusory because unaccompanied by a reasoned explanation connecting the factual predicates to the ultimate conclusion, that opinion has no evidentiary value because an `expert opinion is worth no more than the reasons upon which it rests.' [Citation.]" (Ibid.) Applying these principles, the Jennings court struck as too conclusory the testimony of an expert on infectious diseases who offered a conclusion rather than an explanation of how a retractor was a cause in fact of the plaintiffs infection; the expert opined, "`[i]t just sort of makes sense. We have that ribbon retractor and [it's] contaminated, he's infected.'" (Id. at p. 1120, 8 Cal.Rptr.3d 363, fn. omitted.) That opinion is no different than those offered by appellants' experts, who concluded that the cracks in the property must have been caused by the freeway construction because, according to appellants, the cracks did not exist earlier.
The other theory on which appellants relied to support their claim for inverse condemnation suffered from the same evidentiary deficiencies. Appellants sought recovery for intangible intrusions to their property in the form of noise and dust. "To recover for inverse condemnation under this theory, plaintiffs must be able to establish that their alleged loss resulted from an intangible intrusion onto their property which has `resulted in a burden on the property that is direct, substantial, and peculiar to the property itself.' [Citations.]" (Oliver v. AT&T Wireless Services, supra, 76 Cal.App.4th at pp. 530-531, 90 Cal.Rptr.2d 491.) In Harding v. State of California ex rel. Dept. of Transportation (1984) 159 Cal.App.3d 359, 367, 205 Cal.Rptr. 561, the court determined *576 that plaintiffs alleging "unique damage to their property from dust, debris and highway noise .... should be allowed to establish that they suffered a peculiar and substantial burden as a result of their proximity to the highway." Such a showing may be made through the use of modern measurement techniques in the case of noise or by testimony concerning any actual physical invasion in the case of dust or debris. (Ibid.)
To establish the burden on their property resulting from noise, appellants offered a January 2004 assessment prepared for the City of Claremont indicating that noise levels at various points of the 1-210 Freeway could exceed 70 decibels; a January 2004 Urban Crossroads freeway noise impact assessment indicating that noise levels generated on the freeway were greater than anticipated by the EIR; and March 2004 City Council minutes directing staff to look into possible means of noise mitigation. Regarding dust on the property, appellants offered South Coast Air Quality Management District studies prepared in 2000 and 2001one designed to study the entire South Coast Air Basin by measuring pollutants at both fixed and microscale sites that did not include the city where appellant resided and the other designed to study the impact of the Los Angeles International Airport.
The trial court ruled that the noise reports did not assist appellants in meeting their burden of proof, as they did not discuss any impact on appellants' homes specifically and tended to show that the noise about which appellants complained was not peculiar to appellants' property. The trial court similarly found that the pollution reportswhich analyzed neither appellants' property nor even the city where the property was locatedin no way demonstrated any substantial and peculiar burden on appellants' property.
We agree that this evidence failed to establish that appellants suffered a direct, substantial and peculiar burden on their property as a result of the adjacent freeway. In reaching this conclusion, we are guided by Friends of H Street v. City of Sacramento (1993) 20 Cal.App.4th 152, 167, 24 Cal.Rptr.2d 607, where the court rejected a claim "for inverse condemnation based on damage arising from excessive noise and fumes generated by the operation of H Street. Plaintiffs fail to allege they suffered unique, special or peculiar damages, that is, `not such as is common to all property in the neighborhood....' [Citation.]" (See also Selby Realty Co. v. City of San Buenaventura (1973) 10 Cal.3d 110, 120, 109 Cal.Rptr. 799, 514 P.2d 111 [rejecting claim for inverse condemnation in part because the plaintiff failed to show a direct and specific effect from the appropriation in that the plaintiffs "posture is no different than that of any other landowner along the streets identified in the plan"]; Lombardy v. Peter Kiewit Sons' Co. (1968) 266 Cal.App.2d 599, 602, 72 Cal. Rptr. 240 [rejecting claim for inverse condemnation on the basis of plaintiffs being subjected to "noxious fumes, loud noise, dust-laden air, shocks and vibrations" from a neighboring freeway in part on the ground that the plaintiffs failed to show they uniquely suffered from the effects of the freeway], disapproved on other grounds in Southern Cal. Edison Co. v. Bourgerie (1973) 9 Cal.3d 169, 175, 107 Cal.Rptr. 76, 507 P.2d 964.) Appellants' evidence failed to establish that appellants suffered any type of substantial and peculiar burden that was not suffered by anyone living adjacent to a freeway. Indeed, much of appellants' evidence measured noise and pollution impacts in areas other than where appellants resided. To the extent the reports addressed the vicinity of appellants' property, they tended to show that any noise and pollution impacts were *577 neither substantial nor peculiar to appellants' property.
Finally, appellants also offered a letter from an associate real estate broker who opined that the 1-210 Freeway extension negatively affected the value and salability of homes adjacent to the freeway. But, as explained in San Diego Gas & Electric Co. v. Superior Court, supra, 13 Cal.4th at page 942, 55 Cal.Rptr.2d 724, 920 P.2d 669, "a diminution in property value is not a `taking or damaging' of the property, but an element of the measure of just compensation when such taking or damaging is otherwise proved." Thus, evidence of a negative effect on the value of appellants' property resulting from the construction of the freeway, by itself, was insufficient to support a claim for inverse condemnation.
Accordingly, we conclude that the trial court properly determined the legal issue of the Department's liability for inverse condemnation via a motion brought pursuant to section 1260.040. Although the trial court purported to weigh the evidence submitted by the Department against that submitted by appellants in reaching its determination, we have reached the same conclusion by evaluating only appellants' admissible evidence, accepting it as true and viewing it in appellants' favor. (See generally D'Amico v. Board of Medical Examiners (1974) 11 Cal.3d 1, 19, 112 Cal.Rptr. 786, 520 P.2d 10 ["`No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusions' "].) Because appellants failed to demonstrate that their property suffered a direct, substantial and peculiar burden from the 1-210 Freeway, the trial court properly dismissed their cause of action for inverse condemnation.

B. Nuisance and Negligence.
In its order of dismissal, the trial court also ruled that "[t]he plaintiffs did not present any evidence that the freeway was constructed improperly to support their claim of nuisance and overcome the immunity granted by [Civil Code] 3482." In its April 2005 order following the initial hearing on the motion to dismiss, the trial court had dismissed appellants' negligence claim. Though appellants' arguments in challenging the order of dismissal fail to distinguish among the three causes of action alleged in the complaint, we briefly address appellants' causes of action for nuisance and negligence.
Appellants did not proffer any independent evidence in support of their nuisance and negligence claims beyond that discussed above. They contended their evidence established that the noise, dust and vibrations emanating from the freeway constituted a nuisance that interfered with their comfortable enjoyment of life. (See Civ.Code, § 3479.) We agree with the trial court that Civil Code section 3482 bars appellants' cause of action for nuisance. That statute provides in relevant part that "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance." (Civ.Code, § 3482.) "The California courts have consistently held alleged nuisances arising from the construction, operation and maintenance of streets and highways to be within the protection of section 3482. [Citations.]" (Friends of H Street v. City of Sacramento, supra, 20 Cal.App.4th at p. 162, 24 Cal.Rptr.2d 607.)
*578 Rejecting a strikingly similar nuisance claim to that brought here, the court in Lombardy v. Peter Kiewit Sons' Co., supra, 266 Cal.App.2d 599, 72 Cal.Rptr. 240, accepted as true allegations that the plaintiffs suffered mental, physical and emotional distress, irritation and worry as a result of a freeway's construction and operation, but held that, as a matter of law, the plaintiffs could not state a cause of action for nuisance. (Id. at p. 605, 72 Cal.Rptr. 240.) The court reasoned: "All householders who live in the vicinity of crowded freeways, highways and city streets suffer in like manner and in varying degrees. The roar of automobiles and trucks, the shock of hearing screeching brakes and collisions, and the smoke and fumes which are in proportion to the density of the motor vehicle traffic all contribute to the loss of peace and quiet which our forefathers enjoyed before the invention of the gas engine. [para;] The described conditions occurring on state constructed highways do not constitute a nuisance in a legal sense. State highways are constructed and maintained under the authority of article IV, section 36, of the state Constitution, Government Code, sections 14000, 14001, and Streets and Highways Code, section 90 et seq. Civil Code section 3482 states `Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance.'.. >. [¶] The conditions of which appellants complain are obnoxious to all persons who live in close proximity to the state's freeways but they must be endured without redress." (Lombardy v. Peter Kiewit Sons' Co., supra, at p. 605, 72 Cal.Rptr. 240.) The trial court properly determined that appellants' nuisance claim failed as a matter of law.
With respect to the cause of action for negligence, appellants again relied on the same evidence and alleged it supported their claim that the Department "negligently and carelessly constructed, operated, and maintained the [freeway] in a dangerous condition so as to allow excessive noise, vibration, and air pollution to invade and enter upon" appellants' property. They premised liability on Government Code section 835 and Streets and Highways Code section 215.5. Because the Department is a public entity, any claim of negligence against it must be based on a statute. Government Code section 815 states that except as otherwise provided by statute, public entities are not liable for injuries caused by the acts or omissions of the entities, their employees or any other persons, and that a public entity's statutory liability is subject to its statutory immunity and to any defenses the public entity would have if it were a private person.
Government Code section 835, one of the statutes permitting liability, sets out conditions under which a public entity may be determined to be liable for an injury caused by the condition of its property: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (Gov.Code, § 835.) Government Code section 830, in turn, defines "dangerous condition" as a "condition of property that creates a substantial (as distinguished from a minor, *579 trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (Gov.Code, § 830, subd. (a).) "A condition is not a dangerous condition ... if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (Gov.Code, § 830.2.) And although the question of whether a dangerous condition exists is often one of fact, the issue may be resolved as a question of law when reasonable minds can only draw one conclusion from the facts. (Chowdhury v. City of Los Angeles (1995) 38 Cal.App.4th 1187, 1194, 45 Cal.Rptr.2d 657.)
The only reasonable conclusion to be drawn from appellants' evidence is that the freeway conditions about which appellants complained did not rise to the level of a dangerous condition as defined by statute. The lack of evidence that the freeway construction was the cause of any structural damage bars any negligence claim premised on freeway vibrations. (See Milligan v. Golden Gate Bridge Highway & Transportation Dist. (2004) 120 Cal.App.4th 1, 8-9, 15 Cal.Rptr.3d 25 ["An essential element of a cause of action for damages based on a dangerous condition of public property is causation" and "the issue can be decided as a matter of law where the facts of a case can permit only one reasonable conclusion"].) With respect to the issue of noise and dust emanating from the freeway, we can find no authoritynor have appellants directed us to anythat would suggest such matters may constitute a dangerous condition. Rather, under Government Code section 835 "liability is imposed only when there is some defect in the property itself and a causal connection is established between the defect and the injury." (Zelig v. County of Los Angeles (2002) 27 Cal.4th 1112, 1135, 119 Cal. Rptr.2d 709, 45 P.3d 1171; cf. Mittenhuber v. City of Redondo Beach (1983) 142 Cal. App.3d 1, 7, 190 Cal.Rptr. 694 [heavy use of road is not a factor in establishing a dangerous condition].) The absence of evidence of a dangerous condition precludes appellants' reliance on Government Code section 835 as a basis for establishing liability.
Nor can we find any basis for imposing negligence liability under section 215.5 of the Streets and Highways Code. That statute authorizes the construction of noise attenuation barriers according to a priority system. (Sts. Hy.Code, § 215.5; see also Friends of H Street v. City of Sacramento, supra, 20 Cal.App.4th at p. 163, 24 Cal.Rptr.2d 607.) Though appellants offered evidence that local entities believed there could be improvements made to the noise barriers adjacent to the 1-210 Freeway, their evidence did not suggest that the existing barriers in any way violated the requirements of Streets and Highways Code section 215.5. Because appellants failed to offer evidence supporting a statutory basis for their cause of action for negligence, the trial court properly concluded that the claim lacked merit.

DISPOSITION
The judgment is affirmed. Respondent is awarded its costs on appeal.
ASHMANN-GERST and CHAVEZ, JJ., concur.
NOTES
[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.
[2] Because appellants' two complaints and all subsequent filings were identical, we hereafter refer to all pleadings and motions singularly.
[3] We acknowledge that while "inverse condemnation has been described as `"an eminent domain proceeding initiated by the property owner rather than the condemner" [citation], the Legislature plainly does not equate the two procedures for all purposes. The Law Revision Commission Comment introducing the Eminent Domain Law states, 'The provisions of the Eminent Domain Law are intended to supply rules only for eminent domain proceedings. The law of inverse condemnation is left for determination by judicial development.' (Cal. Law Revision Com. com., 19 West's Ann.Code Civ. Proc. (1982 ed.) foil. § 1230.020, p. 395.)" (Goebel v. City of Santa Barbara (2001) 92 Cal.App.4th 549, 559, 111 Cal.Rptr.2d 901.) Appellants, however, do not challenge the applicability of section 1260.040 on the ground that this action involved inverse condemnation rather than eminent domain, and we see no basis for declining to apply the statute to an inverse condemnation action. "The principles which affect the parties' rights in an inverse condemnation suit are the same as those in an eminent domain action. [Citations.]" (Breidert v. Southern Pac. Co. (1964) 61 Cal.2d 659, 663, fn. 1, 39 Cal.Rptr. 903, 394 P.2d 719.)
[4] According to the Law Revision Commission, section 1260.110 constituted the existing law providing for early resolution of certain issues in eminent domain actions. (Recommendation, supra, 30 Cal. Law Revision Com. Rep (2000) p. 585, fn. 33.) At all relevant times, that statute has provided: "(a) Where objections to the right to take are raised, unless the court orders otherwise, they shall be heard and determined prior to the determination of the issue of compensation. [para;] (b) The court may, on motion of any party, after notice and hearing, specially set such objections for trial." (§ 1260.110.)
[5] We discuss the applicable standard of review in more detail in part II, post.