Filed 10/27/22  LeMons v. City of L.A. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DAMIAN LeMONS et al.,<br><br>　　Plaintiffs and Appellants,<br><br>　　v.<br><br>CITY OF LOS ANGELES et al.,<br><br>　　Defendants and Respondents. | B310701<br><br>(Los Angeles County<br>　Super. Ct. No. BS165799) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Gregory Keosian, Judge.  Affirmed.

The Appellate Law Firm and Aaron Myers for Plaintiffs and Appellants.

Michael N. Feuer, City Attorney, Terry P. Kaufmann Macias, Assistant City Attorney, and Charles D. Sewell, Deputy City Attorney, for Defendants and Respondents.

# INTRODUCTION

Plaintiffs filed a verified petition for writ of mandate and complaint for inverse condemnation against the City of Los Angeles and related local entities challenging, in relevant part, the constitutionality of a one-year moratorium on new development permits imposed on their real property. After staying the inverse condemnation cause of action, the trial court denied the writ petition and found that the moratorium did not implicate the excessive fines clause of the Eighth Amendment to the United States Constitution. The court then granted a motion for summary judgment on the inverse condemnation cause of action, finding that the moratorium was not a taking under the Fifth Amendment to the United States Constitution and article 1, section 19 of the California Constitution. On appeal, plaintiffs challenge the trial court's rulings. We affirm the judgment.

# FACTUAL BACKGROUND

*The Property*

Plaintiffs Damian and Denise LeMons own real property at 2516 13th Avenue in Los Angeles (property), on which a two-story single family residence was built in 1922. The property is located in a Historic Preservation Overlay Zone (HPOZ),[1] specifically the West Adams Terrace HPOZ. In 2002, the Planning Department designated the property as a "contributing element" in the West Adams Terrace HPOZ. A "contributing element" is defined as any building, structure, landscaping, or natural

---

[1]     The purpose of a HPOZ, governed and administered by a Historic Preservation Board and Los Angeles Department of City Planning (Planning Department), was to protect and preserve historically significant buildings and neighborhoods. (See LAMC § 12.20.3(A), (D).)

2

feature previously identified as contributing to the historic significance of a particular HPOZ. (LAMC § 12.20.3(B)(6).)

*The City Permits*

Rehabilitation and repair work performed on a contributing element must conform to the applicable preservation plan and be approved by the Historic Preservation Board. (*Id.*, § 12.20.3(D), (I).) A property owner who wants to demolish, remove, or relocate a contributing element must obtain a certificate of appropriateness (COA) from the Planning Department. (LAMC § 12.20.3(K).) A COA may only be obtained after the plan to demolish or remove a contributing element is presented to the members of the Historic Preservation Board and the Cultural Heritage Commission and subsequently approved by the Planning Department. The City may not approve demolition of a contributing element absent a public hearing.

On November 25, 2014, plaintiffs obtained approval from the West Adams Preservation Board and Planning Department to perform "conforming work" (rehabilitation and repair) on the property. On December 24, 2014, the Department of Building and Safety (DBS) issued a permit to plaintiffs to perform the approved repair and rehabilitation work.

On February 10, 2015, plaintiffs obtained a second permit from the Planning Department for "water damage, termite damage/dry rot repair less than 10% of replacement cost of residential buildings." This permit was an "express permit" for minor repair work that did not require the submission of plans. After issuance of the February 2015 permit, plaintiffs mostly demolished the two-story single family dwelling on the property, leaving only a "small portion of the first story wood floor and foundation."

3

*Administrative Proceedings*

On March 13, 2015, and on April 21, 2015, DBS issued "orders to comply" to plaintiffs to stop demolition work at the property.

Following notice to plaintiffs, DBS conducted a public hearing on January 28, 2016, before a hearing officer to determine whether plaintiffs had performed demolition work without a permit in violation of Los Angeles Municipal Code section 91.106.1.1, and to determine whether to impose a moratorium on the issuance of building permits for up to five years as authorized by Los Angeles Municipal Code section 91.106.4.1(10).[2]

On April 4, 2016, DBS issued a written determination, based on the hearing officer's report, that plaintiffs had "mostly demolished" the structure and had performed demolition work far in excess of any work authorized by their permits. DBS then imposed a one-year moratorium on the issuance of any permits for new development on the property that would expire March 12, 2016.

Plaintiffs challenged DBS's decision to the Board of Building and Safety Commissioners (the Board). Following a public hearing on July 12, 2016, the Board upheld the DBS's findings and denied the appeal.

---

[2] Los Angeles Municipal Code section 91.106.1.1 states, in pertinent part: "No person shall erect, construct, alter, repair, demolish, remove or move any building or structure . . . unless said person has obtained a permit therefor from the department." In turn, Los Angeles Municipal Code section 91.106.4.1(10) provides: "The department shall have the authority to withhold a building permit or relocation permit for a site if the department determines that demolition or relocation work has been done on the site without the benefit of required demolition or relocation permits. If the department, after notice and hearing, makes this determination, the department shall also have the authority to record an affidavit with the County Recorder stating that no permits for any new development shall be issued on the property for a period of five years."

4

# PROCEDURAL HISTORY

On October 6, 2016, plaintiffs filed a verified petition for writ of mandate (Code Civ. Proc., §§ 1085, 1094.5) and complaint for inverse condemnation (U.S. Const., 5th & 8th Amends.; Cal. Const., art. I, § 19) against defendants City of Los Angeles, City of Los Angeles Department of City Planning, City of Los Angeles Office of Historic Resources, City of Los Angeles Department of Building and Safety, City of Los Angeles Board of Building and Safety Commissioners (collectively, the City). As to the mandate petition, plaintiffs alleged, in pertinent part, that the one-year moratorium on new development permits imposed on plaintiffs violated the excessive fines clause of the Eighth Amendment to the United States Constitution. As to the inverse condemnation cause of action, plaintiffs alleged the moratorium constituted a taking without just compensation in violation of the State and Federal Constitutions. Pursuant to a stipulation by the parties and a finding of good cause, the trial court ordered the complaint stayed pending resolution of the writ petition.

On December 11, 2018, the trial court conducted a hearing on the writ petition and took the matter under submission. The court later denied the petition, finding that the excessive fines clause of the Eighth Amendment did not apply as a matter of law to the moratorium because the City did not impose a fine. Defendants then moved for summary judgment on the inverse condemnation cause of action, and on November 17, 2020, the trial court held a hearing on the motion. In a written ruling, the court granted the motion, finding that the moratorium did not constitute a taking under the State or Federal Constitutions; rather, it was a separate government action imposing a penalty for a violation of the Los Angeles Municipal Code.

On December 2, 2020, judgment was entered against plaintiffs and in favor of the City.  Plaintiffs timely appealed.

## DISCUSSION

I.    *Petition for Writ of Mandate*

Plaintiffs challenge the trial court's denial of the writ petition on the ground that the one-year moratorium on new development permits imposed by the City violated the excessive fines clause of the Eighth Amendment.  We disagree.

The Eighth Amendment of the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  (U.S. Const., 8th Amend.)  The excessive fines clause "'limits the government's power to extract payments, whether in cash or in kind, "as punishment for some offense."'  (*Austin v. United States* (1993) 509 U.S. 602, 609–610.)"  (*United States v. Bajakajian* (1998) 524 U.S. 321, 328.)

*Kim v. United States* (9th Cir. 1997) 121 F.3d 1269 (*Kim*) is instructive.  In *Kim,* the Ninth Circuit held that a grocery store owner's permanent disqualification from the federal food stamp program was not an excessive fine prohibited by the Eighth Amendment "because it is not cash or in kind payment directly imposed by, and payable to, the government."  (*Id.* at p. 1276.)  Similarly, a one-year moratorium on new development permits does not require plaintiffs to pay the City in cash or "in kind payment."  Plaintiffs fail to distinguish *Kim* from the case at bar.  Accordingly, the moratorium is not subject to an excessive fine analysis.

Seeking to overcome this hurdle, plaintiffs cite cases involving excessive fines challenges to forfeitures; that is, government seizures of

6

personal or real property. A forfeiture may be considered a payment to the government and thus may be subject to excessive fines analysis under the Eighth Amendment. The forfeiture cases on which plaintiffs rely, however, are inapposite. Here, the City did not attempt to seize plaintiffs' personal or real property under the forfeiture laws. Rather, the City temporarily withheld a permit from plaintiffs for new development on the property. Therefore, as the trial court properly found, the excessive fines clause of the Eighth Amendment does not apply to the moratorium.

II.     *Motion for Summary Judgment*

Plaintiffs challenge the trial court's order granting the City's motion for summary judgment on the inverse condemnation cause of action. Plaintiffs contend that the one-year moratorium on new development permits imposed by the City constituted a regulatory taking entitling them to just compensation. Plaintiffs further contend the inverse condemnation cause of action should have been tried before a jury. These contentions have no merit.

Under the takings clause in the Fifth Amendment of the United States Constitution, and article 1, section 19, of the California Constitution, the government is prohibited from taking private property for public use without just compensation.[3] (Cal. Const., art. 1, § 19; U.S. Const., 5th Amend.; *Lingle*

---

[3]     The takings clause of the Fifth Amendment to the United States Constitution provides, in pertinent part: "nor shall private property be taken for public use, without just compensation." The analogous provision of the California Constitution, article I, section 19, reads in pertinent part: "Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner." Although the takings clause of the California constitution affords somewhat broader protection that its federal counterpart by also requiring compensation when property is damaged for public use, apart from this difference, the state takings clause is construed congruently

7

*v. Chevron U.S.A. Inc.* (2005) 544 U.S. 528, 537 (*Lingle*); *Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 773; *Shaw, supra,* 170 Cal.App.4th at p. 259.)

"Courts have consistently held that [the government] need not provide compensation when it diminishes or destroys the value of property by stopping illegal activity or abating a public nuisance." (*Keystone Bituminous Coal Assn. v. DeBenedictis* (1987) 480 U.S. 470, 492, fn. 22.) Similarly, "[w]hen property has been seized pursuant to the criminal laws or subjected to in rem forfeiture proceedings, such deprivations are not 'takings.'" (*Acadia Technology, Inc. v. United States* (Fed. Cir. 2006) 458 F.3d 1327, 1331; *Calero-Toledo v. Pearson Yacht Leasing Co.* (1974) 416 U.S. 663, 680; *Van Oster v. State of Kansas* (1926) 272 U.S. 465, 468.) The United States Supreme Court has a "longstanding practice" of neither requiring compensation for, nor finding unconstitutional, seizures, forfeitures, and abatements of personal property "to deter illegal activity." (*Bennis v. Michigan* (1996) 516 U.S. 442, 453.) The cases authorizing such government action without compensation are "'firmly fixed in the punitive and remedial jurisprudence of the country.'" (*Id.* at p. 453.)

Here, the one-year moratorium on new development permits did not constitute a taking pursuant to the State and Federal Constitutions. The moratorium was a punitive measure imposed on plaintiffs for a violation of Los Angeles Municipal Code section 91.106.1.1 (i.e., unpermitted demolition), not a "taking for public use" as traditionally understood under constitutional takings jurisprudence. (*Lingle, supra,* 544 U.S. at p. 536 [private property shall not "'be taken for public use, without just compensation'"].)

with the federal clause. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 260 (*Shaw*).)

Moreover, "[t]he fundamental policy underlying the concept of inverse condemnation is that the costs of a public improvement benefiting the community should be spread among those benefited rather than allocated to a single member of the community." (*Pacific Bell v. City of San Diego* (2000) 81 Cal.App.4th 596, 602.)  In contrast, the purpose of a penalty such as the moratorium at issue here is to impose particular burdens upon the violators.  In addition, there is no benefit transferred to the public at large by temporarily withholding a building permit from plaintiffs.  Thus, allowing plaintiffs to obtain compensation for the moratorium is not only inconsistent with the purpose of the takings clause but put plainly, rewards plaintiffs' unlawful conduct.  (See *Bennis v. Michigan, supra,* 516 U.S. at p. 452 [forfeiture imposes "'an economic penalty, thereby rendering illegal behavior unprofitable'"].)  We therefore conclude that no taking has occurred requiring just compensation under the State and Federal Constitutions.

Plaintiffs' argument that the inverse condemnation cause of action should have been tried before a jury is equally unavailing.[4]  First, as

---

[4]    In support of this argument, plaintiffs contend there are triable issues of material fact as to whether: (1) "demolition" in Los Angeles Municipal Code section 91.106.4.1(10) was properly defined; and (2) the structure on the property was "demolished."  The validity of the ordinance and its application to plaintiffs is assumed because of the inherent nature of the takings analysis.  As the United States Supreme Court explained, "an inquiry [into the regulation's underlying validity] is logically prior to and distinct from the question whether a regulation effects a taking, for the Takings Clause presupposes that the government has acted in pursuit of a valid public purpose. . . .  [The Clause] does not bar government from interfering with property rights, but rather requires compensation 'in the event of *otherwise proper interference* amounting to a taking.' [Citation.] Conversely, if a government action is found to be impermissible . . . that is the end of the inquiry.  No amount of compensation can authorize such action." (*Lingle, supra,* 544 U.S. at p. 543.)  Thus, given plaintiffs are seeking just compensation, they are foreclosed from contending there are triable issues of

discussed above, the moratorium did not implicate constitutional takings jurisprudence as a matter of law.  Second, "[e]ven when the question of liability in an inverse condemnation proceeding involves the resolution of factual issues, there is no right to a jury trial."  (*Dina v. People ex rel. Dept. of Transportation* (2007) 151 Cal.App.4th 1029, 1044; accord, *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 951 ["There is no right to jury trial on the issue whether there has been a taking in the first instance"]; see *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 15 ["the right to a jury trial applies in inverse condemnation actions, but that right is limited to the question of damages"].)  Thus, the trial court's determination that plaintiffs had not established a taking did not deprive them of any right to a jury trial.  (See *Dina v. People ex rel. Dept. of Transportation, supra,* at p. 1045.)

## DISPOSITION

The judgment is affirmed.  The City is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

MANELLA, P. J.

CURREY, J.

---

material fact as to the validity of the City's taking (i.e., the ordinance and its application to them).