Filed 3/1/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| EVAN WEISS et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>THE PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION et al.,<br><br>    Defendants and Respondents. | G052735<br><br>(Super. Ct. No. 30-2012-00605637)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kirk H. Nakamura, Judge. Reversed and remanded.

Peterson Law Group, John S. Peterson and Joseph A. Schwar for Plaintiffs and Appellants.

Woodruff, Spradlin & Smart, Gary C. Weisberg, Laura M. Morgan and Esther P. Lin for Defendants and Respondents.

\*          \*          \*

Plaintiffs[1] sued defendants People ex rel. Department of Transportation (CalTrans), and Orange County Transportation Authority (OCTA; collectively, Agencies), for inverse condemnation and nuisance. The complaint alleged a freeway sound wall the Agencies built directly across the freeway from Plaintiffs' homes increased the noise and dust Plaintiffs experienced, interfered with Plaintiffs' enjoyment of their homes, and diminished their property values.

Shortly before trial, the Agencies moved to dismiss Plaintiffs' claims by filing a motion under Code of Civil Procedure section 1260.040, which provides for pretrial resolution of "issue[s] affecting the determination of compensation" in eminent domain cases, not inverse condemnation actions. (*Id.*, subd. (a).) The Agencies did not expressly raise any compensation issues, challenging instead their takings liability. On the inverse condemnation claim, the Agencies argued Plaintiffs could not establish the essential element that the sound wall imposed a direct, substantial, and peculiar burden on Plaintiffs' properties that was not shared in common with the other properties in Plaintiffs' neighborhood. The Agencies argued the nuisance claim failed as a matter of law based on the statutory immunity Civil Code section 3284 provided. The trial court agreed and granted the Agencies' motions.

We reverse. The Agencies now concede Code of Civil Procedure section 1260.040 applies by its terms and enactment in title provisions governing eminent domain *only* to eminent domain proceedings, not inverse condemnation actions. As we explain, we reject the Agencies' request that we "import[ section 1260.040] into the body of inverse condemnation law as a matter of judicial development." In doing so, we disagree with *Dina v. People ex rel. Dept. of Transp.* (2007) 151 Cal.App.4th 1029 (*Dina*), which viewed the statute as applying to inverse condemnation actions. Nor do

---

[1] Plaintiffs are Evan Weiss, Belinda Henry, Michael Hayes, Micheale Hayes, Ross Shaw, Debbie Shaw, and 1819 MSC, LLC (collectively, Plaintiffs).

we see any basis to apply the statute to resolve Plaintiffs' nuisance claims, on which they were entitled to a jury trial absent a summary judgment motion or other statutorily-authorized manner of case disposition. We therefore remand the matter for further proceedings.

I

FACTS AND PROCEDURAL HISTORY

Interstate 5 (I-5) is a freeway that runs north and south through a residential area in the City of San Clemente (City). Plaintiffs own four separate properties on the east side of I-5 near its intersection with El Camino Real. Three of the properties are single-family homes and the fourth is a small hotel. Approximately 600 feet separate the northernmost and southernmost of Plaintiffs' properties, with other residential and commercial properties located among and between Plaintiffs' properties. The terrain gently slopes up from where El Camino Real runs under I-5 toward Plaintiffs' properties and beyond.

Under Streets and Highways Code section 215.5, CalTrans maintains a system for identifying and prioritizing locations for the possible installation of sound walls along California's freeways. Under this system, CalTrans conducts progressively more detailed studies of the locations. Construction begins when funding becomes available and the location satisfies all established criteria.

In 1999, CalTrans measured the freeway noise on the west side of I-5 opposite Plaintiffs' properties after receiving complaints from area residents. The measurements, however, did not meet the 67-decibel threshold required for further action. In 2001, CalTrans again measured the freeway noise in the residential area west of I-5 after receiving further complaints. This time, the measurements exceeded the 67-decibel threshold in at least two locations. CalTrans therefore referred the matter to OCTA, which placed it on a waiting list of areas to undergo further noise and engineering

3

analysis to determine whether constructing a sound wall could feasibly reduce noise west of I-5.

In January 2004, the Agencies completed the "Traffic Noise Impact Technical Report" (Noise Impact Report) for the west side of I-5, and concluded construction of a sound wall could achieve the required noise reduction within the permissible cost range. In August 2004, the Agencies completed and approved the "Noise Barrier Scope Summary Report" (Scope Report) for the west side of I-5. This report examined multiple wall locations and heights to determine which combination would benefit the greatest number of households, and identified the specific size and location for a sound wall on the west side of I-5 to benefit the greatest number of households within the permissible budget. Although the report examined the wall's potential positive and negative impacts on the area west of I-5, it did not consider the impacts on the area east of I-5 where Plaintiffs' properties are located. Based on the Scope Report, the Agencies placed the sound wall on the waiting list for design and construction funding.

In 2008, that location rose to the top of the waiting list. Through a cooperative agreement with CalTrans, OCTA hired an engineer to prepare the construction plans for the wall based on the size, location, and other specifications identified in the approved Scope Report. Using those plans, the Agencies completed construction of the wall in September 2012.

As approved by the Scope Report and constructed, two overlapping walls were constructed along the west side of I-5. The first is a 14- to 16-foot tall masonry wall that runs along the El Camino Real onramp to southbound I-5 and further south along the freeway's western shoulder until it meets an existing sound wall south of El Camino Real. The second wall is 14 feet tall and extends approximately 860 feet along the western shoulder where I-5 crosses over El Camino Real. The wall is constructed of masonry block before and after it crosses the freeway's bridge over El Camino Real. The

4

portion on the bridge is constructed of Paraglass, which is a clear Plexiglas-type material. Paraglass was used on the bridge because (1) it is much lighter and the Agencies were concerned the bridge could not support the weight of a 14-foot tall masonry wall, and (2) a masonry wall would have required closing several traffic lanes for an extended period while the mortar cured. According to Plaintiffs, Paraglass is much more reflective of sound and light than masonry blocks. Plaintiffs' properties are located approximately 365 to 480 feet from the Paraglass portion of the wall on the opposite side of I-5 and most have a direct line of sight to the wall.

In 2011, while the wall was under construction, some Plaintiffs and other residents from the east side of I-5 complained to the City that the wall increased the freeway noise on the east side of I-5. The City hired a consultant to determine whether the wall increased the noise on the east side, but it did not hire the consultant until after the Agencies began construction. The consultant therefore did not take any sound readings for the noise levels east of I-5 before construction began. The consultant measured the noise levels before and after construction of the Paraglass portion of the wall, and concluded "it appears that the presence of the soundwall has increased the freeway noise level in the residential community [east of I-5] by 0.9 to 2.1 [decibels]." But the consultant explained there were a number of factors affecting the noise levels that could not be accounted for in the analysis, and therefore the consultant could not definitively conclude the sound wall increased the freeway noise on the east side of I-5. A CalTrans noise study protocol explains, "It is widely accepted that the average healthy ear . . . can barely perceive noise level changes of 3 [decibels]." (Underlining removed.)

Plaintiffs filed this lawsuit in October 2012, alleging claims for inverse condemnation, trespass, and nuisance against the Agencies.[2] The complaint alleged the

---

[2] The owners of two additional properties east of I-5 were plaintiffs in the trial court, but they have not joined Plaintiffs in appealing from the trial court's judgment.

sound wall increased the impact of freeway noise, vibration, glare, and dust on Plaintiffs' properties, obstructed Plaintiffs' ocean views, interfered with Plaintiffs' enjoyment of their properties, and diminished their properties' values. Plaintiffs focused on the Paraglass portion of the wall, claiming it reflected a greater amount of noise toward Plaintiffs' properties than the masonry block portions. The trial court sustained without leave to amend the Agencies' demurrers to the trespass claim and overruled their demurrers to the other claims. The court also granted without leave to amend the Agencies' motion to strike the allegations regarding view obstruction.

In January 2015, the Agencies filed two motions under Code of Civil Procedure section 1260.040 seeking to dismiss Plaintiffs inverse condemnation and nuisance claims. The Agencies argued Plaintiffs' inverse condemnation claim failed because they could not establish the essential element that the sound wall imposed a direct, substantial, and peculiar burden on Plaintiffs' properties that differed from the burden imposed on other properties in Plaintiffs' neighborhood. The Agencies argued Plaintiffs' nuisance claim failed because they could not overcome two different statutory immunities. First, the Agencies claimed they were immune from liability under Civil Code section 3482 because the sound wall was designed and constructed under the express authority of Streets and Highways Code sections 90 et seq. and 215.5. Second, the Agencies asserted they were entitled to design immunity under Government Code section 830.6.

In support, the Agencies asked the trial court to judicially notice (1) the minutes from two of the City's council meetings showing Plaintiffs and several other City residents complained about the increased noise allegedly caused by the wall, and (2) another lawsuit that 20 other property owners filed against the Agencies making the same claims as Plaintiffs. The Agencies also submitted Plaintiffs' deposition testimony and discovery responses showing Plaintiffs' claims regarding the wall's impacts were similar to the complaints of other residents in Plaintiffs' neighborhood. Finally, the

6

Agencies submitted declarations from the engineer who designed the wall and the other supervisors who approved the wall to show it was designed according to the Agencies' established procedures and the wall's design was reasonable.

Plaintiffs opposed the motions. On the inverse condemnation claim, Plaintiffs argued the sound wall imposed unique and peculiar burdens on their properties because they had a direct line of sight to the sound wall and the increased amount of noise and dust they experienced was different from other residents. According to Plaintiffs, the noise they experienced before the wall was significant, but tolerable. After the wall, Plaintiffs contend they must sleep in different rooms in their homes to minimize the noise, cannot sleep with the windows open, experience difficulty having conversations outside, and even experience difficulty having telephone conversations.

Plaintiffs argued that Civil Code section 3482's immunity did not apply because the relevant Streets and Highways Code provisions authorize the Agencies to construct sound walls to reduce freeway noise, not increase it. Plaintiffs also argued the immunity did not apply because the unreasonable design of the wall increased the noise for some properties. Finally, Plaintiffs argued the design immunity of Government Code section 830.6 was limited to claims regarding the dangerous condition of public property, and Plaintiffs did not allege such a claim.

In support, Plaintiffs filed the expert witness declarations of an acoustical expert and a civil engineer to show the wall increased the amount of noise and dust for Plaintiffs' properties, and the wall's design was unreasonable because it did not consider the impact on Plaintiffs' properties on the opposite side of the freeway. Plaintiffs also filed the declaration of a real estate appraiser who opined about the negative effect the sound wall had on Plaintiffs' property values. Plaintiffs also submitted their deposition testimony to show the wall's impact on them, the deposition testimony of the Agencies' engineers regarding the wall's design, CalTrans' protocols for noise analysis, the sound measurements taken by the City's consultant, and various sound measurements CalTrans

7

took.    Plaintiffs opposed the Agencies' judicial notice request, and asked the court to judicially notice a voluntary dismissal filed in the lawsuit that was the subject of the Agencies' request.    The Agencies filed numerous evidentiary objections challenging Plaintiffs' declarations.

In July 2015, the trial court granted the Agencies' motions.  On the inverse condemnation claim, the court found Plaintiffs "cannot meet their burden [of] showing the injuries suffered were 'peculiar' to their properties.  They cannot show they suffered a unique and peculiar damage 'not such as is common to all property in the neighborhood.'"  The court pointed to the many noise complaints by other area residents, the many other properties interspersed between and among Plaintiffs' properties, and the testimony by one Plaintiff that many other neighbors besides Plaintiffs suffered increased noise and dust.  On the nuisance claim, the court concluded Civil Code section 3482's immunity applied because the Streets and Highways Code authorized the Agencies to build the sound wall and the Agencies' protocols that applied to this sound wall did not require the Agencies to consider the impacts on Plaintiffs and other residents on the opposite side of the freeway.  The court also concluded Government Code section 830.6's design immunity applied because Plaintiffs' claims challenged the sound wall's design.  Finally, the court granted the parties' judicial notice requests, but did not rule on the Agencies' evidentiary objections.

Based on its ruling, the trial court entered judgment for the Agencies and this appeal by Plaintiffs followed.

## II

### DISCUSSION

*Code of Civil Procedure Section 1260.040 Does Not Provide for a Nonsuit or Other Dispositive Motion to Resolve Liability In Limine in Inverse Condemnation Actions, and We Decline to Judicially Create Such a Procedure*

Plaintiffs challenge the Agencies' reliance on Code of Civil Procedure section 1260.040 as authority for a case-dispositive in limine motion to resolve the issue of a public entity's takings liability in an inverse condemnation action.[3] The trial court rejected the challenge, but Plaintiffs renew their argument on appeal, pointing out the Legislature enacted section 1260.040 as part of the Eminent Domain Law,[4] where liability is not at issue — only compensation for the property owner. In contrast, the Plaintiffs here initiated an inverse condemnation action, and therefore did not proceed under the statutes governing eminent domain.

Eminent domain and inverse condemnation are related but distinct areas of law. "Both eminent domain proceedings and inverse condemnation actions implement the constitutional rule that private property may not be 'taken or damaged' (Cal. Const., art. I, § 19) for public use without just compensation. But 'inverse condemnation and eminent domain proceedings are not identical. A property owner initiates an inverse condemnation action, while an eminent domain proceeding is commenced by a public entity. [Citation.] Eminent domain actions typically focus on the amount of compensation owed the property owner, since by initiating the proceeding the government effectively acknowledges that it seeks to "take or damage" the property in question.' [Citation.] 'But the same is not true of inverse condemnation: ". . . [I]n an inverse condemnation action, the property owner must first clear the hurdle of

---

[3]     All further statutory references are to the Code of Civil Procedure.

[4]     Section 1230.010 provides, "This title shall be known and may be cited as the Eminent Domain Law."

establishing that the public entity has, in fact, taken [or damaged] his or her property before he or she can reach the issue of 'just compensation.'"'" (*Boxer v. City of Beverly Hills* (2016) 246 Cal.App.4th 1212, 1218 (*Boxer*).)

Contrary to their position below, the Agencies now concede section 1260.040 "does not directly apply to inverse condemnation actions" because it "is found in Title 7 of the Code of Civil Procedure, which is called 'Eminent Domain Law.'" As the Agencies acknowledge, the Law Revision Commission comments "introducing the original Eminent Domain Law state that '[t]he provisions of the Eminent Domain Law are intended to supply rules *only* for eminent domain proceedings. The law of inverse condemnation is left for determination by judicial development.' [Citation.]" (*Chhour v. Community Redevelopment Agency* (1996) 46 Cal.App.4th 273, 279 (*Chhour*) [italics added], quoting Cal. Law Revision Com. com, 19A West's Ann. Code Civ. Proc. (1982 ed.) § 1230.020, p. 395.)

The Agencies observe that "the judiciary and the Legislature frequently cross-pollinate" in the areas of inverse condemnation and eminent domain (*Chhour*, *supra*, 46 Cal.App.4th at p. 279), and on that general basis, the Agencies assert section 1260.040 "should be imported into the body of inverse condemnation law as a matter of judicial development." But in light of the well-established policy against motions in limine as a means of summary case disposition, we decline the Agencies' invitation to engraft, *ipse dixit*, a new pretrial procedure in the nature of a nonsuit motion to decide the issue of liability in inverse condemnation cases. (See *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1593 (*Amtower*) ["What in limine motions are *not* designed to do is to replace the dispositive motions prescribed by the Code of Civil Procedure"].) In our view, the language, legislative history, and purpose of section 1260.040's three brief clauses do not support the Agencies' request for a novel summary mechanism on an issue — liability, rather than compensation — in actions the Legislature did not intend to address. This is particularly true where the Code of Civil

10

Procedure already provides an extensive statutory framework and well-developed body of law on summary judgment as a dispositive motion.  We recognize we reach a different conclusion than the Second District, Division Two reached in *Dina*.

We begin with the text of the statute.  Subdivision (a) of section 1260.040 provides, "If there is a dispute between plaintiff and defendant over an evidentiary or other legal issue affecting the determination *of compensation*, either party may move the court for a ruling on the issue."  (Italics added.)  Subdivision (c) states, "This section supplements, and does not replace any other pretrial or trial procedure otherwise available to resolve an evidentiary or other legal issue affecting the determination of compensation."  As a matter of procedure, subdivision (b) specifies:  "Notwithstanding any other statute or rule of court governing the date of final offers and demands of the parties and the date of trial of an eminent domain proceeding, the court may postpone those dates for a period sufficient to enable the parties to engage in further proceedings before trial in response to its ruling on the motion."

"The primary purpose of statutory construction is to ascertain the Legislature's intent."  (*California School Employees Assn. v. Governing Bd. of South Orange County Community College Dist.* (2004) 124 Cal.App.4th 574, 583 (*CSEA*).)  Statutory interpretation is a question of law (*Florez v. Linens 'N Things, Inc.* (2003) 108 Cal.App.4th 447, 451) in which we ascertain the Legislature's intent "'with a view to effectuating the purpose of the statute, and construe the words of the statute in the context of the statutory framework as a whole'" (*Holcomb v. U.S. Bank Nat. Assn.* (2005) 129 Cal.App.4th 1494, 1504).  "'If the language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary.' [Citation.]" (*CSEA*, *supra*, 124 Cal.App.4th at p. 583.)  But if the statutory language "'leaves doubt about meaning, we may consult other evidence of the Legislature's intent, such as the history and background of the [provision].'" (*Ibid.*)

11

Here, the words the Legislature chose to employ in section 1260.040 do not reflect an intent to create a procedure for determining a public entity's *liability* in eminent domain or inverse condemnation proceedings.  Instead, the statute is plainly aimed at "issue[s] affecting the determination of compensation."  (§ 1260.040, subd. (a).) Liability is not mentioned and we may not "insert what has been omitted" from a statute. (§ 1858; *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998 [in construing legislation, "courts must not add provisions to statutes"].)

Nevertheless, in *Dina*, the court found it "reasonable" to construe section 1260.040, subdivision (a), "as permitting the trial court to adjudicate the question of the Department [of Transportation]'s liability for inverse condemnation" because "'[w]hat could affect the determination of compensation more than whether or not the plaintiffs have a valid cause of action?'" (*Dina*, *supra*, 151 Cal.App.4th at p. 1041.)  In other words, if the plaintiffs could not establish the public entity's takings liability, compensation would be moot.  On this view, the liability determination would not only "affect[] the determination of compensation" by mooting it, the public entity's motion would be case-dispositive, requiring dismissal of the plaintiffs' inverse condemnation suit because they could not prove liability.

*Dina* endorsed this procedure.  There, in filing its section 1260.040 motion in the trial court, the Department of Transportation "sought an order of dismissal on the ground that [the plaintffs'] claims were legally without merit," and the trial court granted the motion. (*Dina*, *supra*, 151 Cal.App.4th at p. 1044.)  On appeal, the *Dina* court construed section 1260.040 "to authorize the Department to move for a ruling on liability, as that was a legal issue affecting the determination of compensation" by mooting it in the absence of liability. (*Dina*, at p. 1043.)  *Dina* concluded, "Nothing in the language of section 1260.040 . . . bars a party from seeking an order on a legal issue that disposes of an inverse condemnation action." (*Dina*, at p. 1044.)  The court relied on the Code of Civil Procedure's definition of a motion in section 1003, which states generally that "[a]n

12

application for an order is a motion." Because the *Dina* court did not perceive anything in the language of section 1260.040 precluding the Department's request for an order of dismissal in its motion under section 1260.040, *Dina* treated the request as a motion and section 1260.040 as authorizing the dismissal request. (*Dina*, at p. 1044.)

But *Dina* also found "it . . . equally reasonable to construe the statute as providing a more limited procedure, given that it is silent with respect to the trial court's ability to weigh evidence or enter judgment on the basis of its ruling on the evidentiary or legal issue" affecting compensation or liability. (*Dina*, *supra*, 151 Cal.App.4th at p. 1041.) Finding section 1260.040 ambiguous, *Dina* turned to the legislative history to aid in construing the statute.

We are not persuaded by *Dina*'s approach. In our view, section 1260.040 offers no basis for a dismissal or other case-dispositive motion because it includes no words to that effect. Nor do we see in section 1003 a means to bootstrap such a mechanism because that general provision does not address or mention case-terminating procedures. While section 1003 does define an application for an order as "a motion," it does not give statutory authorization to every request a party makes. Instead, the fact that sections 1260.040 and 1003 are both silent on the weighty subject of case disposition suggests neither are to be employed for that purpose.

In like manner, the absence of any mention of "liability" in section 1260.040 suggests the Legislature did not intend that section as a means to determine a public entity's inverse condemnation liability. *Dina* did not analyze whether the Legislature intended section 1260.040 to apply to inverse condemnation cases, possibly because the appellants there "d[id] not challenge the applicability of section 1260.040 on the ground that this action involved inverse condemnation rather than eminent domain[.]" (*Dina*, *supra*, 151 Cal.App.4th at p. 1041, fn. 3.) But as the *Dina* opinion acknowledges (*ibid.*), section 1260.040 was enacted as part of the Eminent Domain Law, and we therefore *know* the *Legislature* did not intend the provision to apply

13

to determining liability in inverse condemnation cases, having left that branch of law to judicial development.

Under that authority, the Agencies request that we "import" section 1260.040 into inverse condemnation jurisprudence and construe it to authorize case-dispositive in limine motions on legal issues affecting liability. As discussed, we do not believe the words of the statute support that approach; nor does the broader statutory framework or legislative history.

Section 1260.040 originated in the Law Revision Commission's recommendation that the Legislature adopt "an express statutory provision for early resolution of legal issues affecting valuation in eminent domain cases." (Cal. Law Revision Com., Recommendation: Early Disclosure of Valuation Data and Resolution of Issues in Eminent Domain (Oct. 2000) 30 Cal. Law Revision Com. Rep. (2000), p. 585 (Recommendation).) The Law Revision Commission (Commission) recommended "[t]he procedure *should be limited* to resolution of legal issues that may affect *compensation*, such as what constitutes the larger parcel, or the probability of a zoning change" (*id.* at p. 586, italics added). Respondent Caltrans endorsed the proposed legislation as a means to resolve compensation issues in limine, citing "[t]he ability to challenge by pretrial motion improper valuation methods used by appraisers . . . that, under current practice, are often improperly sent to juries." (Cal. Dept. Transportation, Enrolled Bill Report, Analysis of Assem. Bill No. 237 (2001-2002 Reg. Sess.) Oct. 2001, p. 3.) Neither Caltrans nor any other commenting agency or entity suggested the new motion procedure was also intended to determine a public entity's takings liability before trial.

By enacting Assembly Bill No. 237 (2001-2002 Reg. Sess.) (AB 237) in 2001 (Stats. 2001, ch. 428, § 9),[5] the Legislature adopted the new motion procedure and a host of other recommendations sponsored by the Commission "to increase the number of

---

[5]  We grant the Plaintiffs' unopposed motion to take judicial notice of AB 237's legislative history.

14

cases settled without trial." (Sen. Com. on Judiciary, com. on AB 237 as amended May 31, 2001, p. 2.) Some of the other new provisions fostered settlement by "allow[ing] parties to submit any dispute in an eminent domain proceeding for mediation or arbitration; . . . requir[ing] appraisal summaries and offers of compensation to contatin detail sufficient to indicate the basis for the appraisal or offer; and . . . requir[ing] final offers and demands to include all elements of required compensation, including loss of goodwill." (*Id.* at p. 1.) As the Senate Judiciary Committee's report observed, the new measures focused on resolving compensation disputes because "in almost all" eminent domain litigation, "the primary issue is the amount of compensation." (*Ibid.*)

Notably, the Legislature knew how to enact pretrial procedures governing takings liability when it wanted to do so in eminent domain proceedings. While liability is not ordinarily at issue in such proceedings, the legislative history supporting AB 237 recognized that "[e]xisting law provides for the resolution by the court of disputes on matters of law, such as the [eminent domain public entity] plaintiff's *right to take the subject property*, prior to jury trial on the issue of just compensation." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d Reading analysis of AB 237 as amended Aug. 28, 2001, p. 4; accord, Sen. Com. on Judiciary, com., *supra*, at pp. 4-5, italics added.) Thus, section 1260.110 provides now and at the time AB 237 was enacted: "(a) Where objections *to the right to take* are raised, unless the court orders otherwise, they shall be heard and determined prior to the determination of the issue of compensation. [¶] (b) The court may, on motion of any party, after notice and hearing, specially set such objections for trial." (Italics added.) In turn, section 1250.360 specifies the grounds on which a property owner may challenge the public entity's right to take the property (e.g., "plaintiff is not authorized by statute to exercise the power of eminent domain for the purpose stated in the [eminent domain] complaint"; "The stated purpose is not a public use," etc.). The fact the Legislature previously addressed liability in related eminent domain statutes but chose not to include it as an issue to be decided by

15

section 1260.040's pretrial motion procedure undermines *Dina*'s conclusion the provision should be interpreted to reach liability issues implicitly.

The Agencies argue interpreting section 1260.040's pretrial motion procedure to extend to public entity liability serves the Legislature's intended purpose of promoting settlements, and therefore should apply to inverse condemnation cases. To be clear, we see no objection to applying section 1260.040 to resolve legal issues regarding *compensation* to foster settlement in inverse condemnation cases. But a laudable general policy goal of promoting settlement does not displace the words of the statute. Moreover, the manner in which a section 1260.040 motion functions does not lend itself to promoting settlement in the liability context. Instead, it operates either as a bludgeon to end the plaintiff's case or a nullity that does nothing to reduce the scope of a trial if the plaintiff establishes a prima facie case of liability.

*Dina* analogized the procedure established in section 1260.040 to a nonsuit motion. (*Dina*, *supra*, 151 Cal.App.4th at pp. 1045-1047.) Although not explicitly stated, *Dina*'s analogy appears to stem from the trial court's authority under section 1260.040, subdivision (a), to resolve disputes "between plaintiff and defendant over an evidentiary *or other legal* issue affecting the determination of compensation." (Italics added.) Evidentiary disputes are generally for the trier of fact to resolve, but section 1260.040's formulation ("[an]other legal issue") recognizes they may constitute a legal issue for the court to resolve as a matter of law, as when the question is whether a party has offered prima facie evidence to support its position. Consequently, *Dina* reasoned: "'Continuing the analogy of the procedure below to a nonsuit gives us guidance as to the standard of review to be applied on appeal. We '"must accept all facts asserted in the opening statement [or here, asserted in the best case scenario] as true and must indulge every legitimate inference which may be drawn from those facts. [Citations.] . . . . [A nonsuit] can only be upheld on appeal if, after accepting all the asserted facts as true and indulging every legitimate inference in favor of plaintiff, it can

16

be said those facts and inferences lead inexorably to the conclusion plaintiff cannot establish an essential element of its cause of action . . . .'" [Citations].'" (*Dina*, at p. 1047, brackets in original.)

Continuing the nonsuit analogy, *Dina* observed: "Stated similarly, '[a] trial court may grant a nonsuit only when, disregarding conflicting evidence, viewing the record in the light most favorable to the plaintiff and indulging in every legitimate inference which may be drawn from the evidence, it determines there is *no* substantial evidence to support judgment in the plaintiff's favor.' [Citation.]" (*Dina*, *supra*, 151 Cal.App.4th at p. 1047, original italics.)

In our view, nonsuit is not the most apt analogy. A nonsuit is a trial motion; it is not available before trial as *Dina* contemplated. (See § 581c [nonsuit may be made "[o]nly after, and not before, the plaintiff has completed his or her opening statement"].) The case-dispositive pretrial procedure *Dina* authorized under section 1260.040 is more similar to a defendant's motion for summary judgment. A defendant moving for summary judgment meets its burden of showing a cause of action has no merit if it shows that one or more elements of the cause of action cannot be established, or that there is a complete defense to the cause of action. (§ 437c, subd. (p)(2).) If the defendant carries that burden, it "causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) A prima facie showing "is one that is sufficient to support the position of the party in question" (*id.* at p. 851), and therefore, a party opposing summary judgment makes the requisite prima facie showing if the evidence would allow a reasonable trier of fact to find in favor of that party at trial. (*Id.* at p. 857.)

Whether nonsuit or summary judgment is more applicable, we find it difficult to conceive that in three brief words ("other legal issue"), the Legislature intended to create a new dispositive procedure reproducing the safeguards, entire

17

statutory framework, and extensive caselaw governing either a nonsuit motion or a summary judgment motion. But even assuming arguendo that is true, the procedure enacted in section 1260.040 does not serve the Legislature's purpose of promoting settlement when applied to determining liability in inverse condemnation cases. It may be of use in narrowing *compensation* issues before trial, thereby fostering settlement, as demonstrated by the cases the Agencies rely on, where one or more theories of compensation may not be available to the property owner as a matter of law or for lack of prima facie evidence. But these cases provide no support for use of section 1260.040's motion procedure to narrow *liability* issues to foster settlement; instead, they involved compensation issues.

Thus, in *City of Perris v. Stamper* (2016) 1 Cal.5th 576 (*Stamper*), the Supreme Court recognized that "legal questions that affect the *type* of compensation" may be resolved as a matter of law by the trial court (*id.* at p. 593, italics added), as opposed to "pure questions of fact directly pertaining to the *amount* of compensation," which belong to the jury in an eminent domain case. (*Id.* at p. 595, italics added.) In *Stamper*, the court held that whether the proper measure of damages would include the value of the defendant's land as dedicated property — as the city urged because it would yield a lower compensation figure, or whether dedication was precluded as the property owner asserted — were legal issues the trial court could decide in bifurcated proceedings before a jury trial on compensation.

Similarly, in *Los Angeles Unified School District v. Pulgarin* (2009) 175 Cal.App.4th 101 (*Pulgarin*), another eminent domain case, the trial court decided a legal issue affecting compensation before trial, namely whether a business lessee operating on property taken by the public entity was precluded from lost goodwill damages because it lacked a written lease. The trial court held the property owner could not recover goodwill damages, and the appellate court reversed. (*Id.* at p. 105.) Relying on *Pulgarin*, the Agencies argue that "[a]lthough the court held that the lack of a written

18

lease did not defeat the business's claim for goodwill [citation], had the court agreed with the condemning agency, [its pretrial] section 1260.040 motion would have been dispositive on the goodwill claim."

We are not persuaded by this line of argument. First, neither *Pulgarin* nor *Stamper* expressed any opinion on section 1260.040, let alone endorsed using it to determine liability in inverse condemnation cases, rather than compensation issues in eminent domain proceedings. Second, the Agencies' reliance on *Pulgarin* for the notion that the section 1260.040 motion utilized there "would have been dispositive" if only the reviewing court "agreed with the condemning agency" is worthless. The court did not so hold, and if it had, the Agencies point to nothing in the opinion that suggests the court's ruling would have been *case*-dispositive. Nothing in the opinion suggests the reviewing court viewed a ruling excising a measure of damages as a substitute for a summary judgment motion.

Moreover, even accepting the proposition that a motion under section 1260.040 may foster settlement by paring or clarifying as a matter of law the proper measure of compensation the property owner may seek, the same is not true of a motion concerning the public entity's liability. A public entity incurs liability when it takes or damages private property. "'Property is "taken or damaged" within the meaning of article I, section 19 of the California Constitution, so as to give rise to a claim for inverse condemnation, when: (1) the property has been physically invaded in a tangible manner; (2) no physical *invasion* has occurred, but the property has been physically *damaged*; or (3) an intangible intrusion onto the property has occurred which has caused no damage to the property but places a *burden* on the property that is direct, substantial, and peculiar to the property itself.'" (*Boxer*, *supra*, 246 Cal.App.4th at p. 1218; *Oliver v. AT&T Wireless Services* (1999) 76 Cal.App.4th 521, 530.)

"'When, as here, the conduct of a public entity results in an intangible intrusion onto the plaintiff's property that does not physically damage the property, the

19

question whether there has been a "taking or damaging" of the property sufficient to support a cause of action for inverse condemnation is more difficult. In these circumstances the plaintiff must [show] that the intrusion has resulted in a burden on the property that is direct, substantial, and peculiar to the property itself.'" (*Boxer*, *supra*, 246 Cal.App.4th at p. 1218; see *Varjabedian v. Madera* (1977) 20 Cal.3d 285, 298.)

As demonstrated here and in *Dina*, a trial court's decision on a pretrial motion on the issue of liability does nothing to encourage the parties to work toward settlement, as contemplated in section 1260.040, subdivision (b), which enables the court to postpone "the date of final offers and demands of the parties and the date of trial in an eminent domain proceeding" so the parties may "engage in further proceedings before trial in response to its ruling on the motion." Instead, if the public entity defendant in an inverse condemnation action is successful on a section 1260.040 motion challenging liability because the property owner is unable at the time of the motion to present prima facie evidence the defendant has invaded his or her property rights, then there is no incentive for the entity to negotiate. In effect, the public entity has achieved an early summary judgment ruling that the plaintiff cannot establish the liability element essential to its inverse condemnation cause of action, albeit by an in limine motion and without having to abide by the detailed statutory constraints governing summary judgment motions.

Similarly, if the inverse condemnation plaintiff prevails on the motion because he or she as the property owner *is* able to make a prima facie liability showing, then nothing has been achieved for purposes of settlement. No issue of liability has been narrowed as a matter of law to provide the parties incentive to settle; instead, the case remains in the identical posture before the court endeavored to hear and reach a decision on the section 1260.040 motion. Specifically, the case sits awaiting a bench trial for the court to consider the evidence again, together with any new evidence presented at trial,

20

and to decide — now as the trier of fact, not the prima facie standard's gatekeeper — whether the plaintiff has met its burden of proof on liability.[6]

Of course, rather than awaiting trial, a public entity defendant that fails to prevail on a section 1260.040 motion disputing liability might be tempted to file a summary judgment motion. But that would be a waste of judicial resources, redundant to the motion the trial court heard and denied. For this reason, in addition to the lack of support in the statutory text and legislative history, we part company with *Dina* in interpreting section 1260.040 to authorize pretrial liability determinations. *Dina* rejected the plaintiffs' argument there that "disposition of their claims was limited to a motion for summary judgment." (*Dina*, *supra*, 151 Cal.App.4th at p. 1046.) The court reasoned the public entity defendant was not so limited because "[t]he procedural mechanism implemented by section 1260.040 expressly 'supplements, and does not replace any other pretrial or trial procedure otherwise available to resolve an evidentiary or other legal issue affecting the determination of compensation.'" (*Dina*, at p. 1046, quoting § 1260.040, subd. (c).)

But as we have explained, a trial court's decision on a motion filed under section 1260.040 to determine the public entity's liability in an inverse condemnation action does not narrow that question of liability to foster settlement. Consequently, in our view, such a motion does not meaningfully "supplement" existing pretrial procedures governing a summary judgment motion — instead it does nothing more than purport to replace them, which subdivision (c) of section 1260.040 expressly disclaims. As a respected commentator oft-cited by the Law Revision Commission in its

---

[6] As *Dina* observed, "Even when the question of liability in an inverse condemnation proceeding involves the resolution of factual issues, there is no right to a jury trial." (*Dina*, *supra*, 151 Cal.App.4th at p. 1044; accord, *San Diego Gas Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 951 ["There is no right to jury trial on the issue whether there has been a taking in the first instance"]; *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 15 ["the right to a jury trial applies in inverse condemnation actions, but that right is limited to the question of damages"].)

Recommendation to the Legislature to adopt AB 237 later concluded in criticizing *Dina*: "The motion in limine procedure of CCP § 1260.040, which was enacted to determine key disputed evidentiary points before trial in a direct condemnation [proceeding] [citation] was used to address liability in an inverse case in *Dina* . . . .  Although a motion for summary judgment may have been appropriate in that case, in the author's view the motion in limine was not the proper vehicle to dispose of the case."  (2 Matteoni, Condemnation Practice in California (Cont. Ed. Bar. 3d ed., Oct. 2016 update) *Trial Preparation and Trial*, § 17.8, p. 17-17; see Recommendation, *supra*, 30 Cal. Law Revision Com. Rep., pp. 573, 579, 585 & fns. 1, 17, 31 [citing 1 Matteoni, Condemnation Practice in California (Cont. Ed. Bar. 2d ed. 2000) *Trial Preparation and Trial*, §§ 9.2, 9.14, 9.12, pp. 364, 389-90, 384-385.) We agree with Matteoni's conclusion.

In *Amtower*, the court catalogued and lamented the use of "nontraditional in limine motions [resulting] in a court's dismissing a cause on the pleadings," noting that "[a]ppellate courts are becoming increasingly wary of this tactic."  (*Amtower*, *supra*, 158 Cal.App.4th at pp. 1593-1594; see *R & B Auto Center, Inc. v. Farmers Group, Inc.* (2006) 140 Cal.App.4th 327, 371 (conc. opn. of Rylaarsdam, J.) ["To have the sufficiency of the pleading or the existence of triable issues of material fact decided in the guise of a motion in limine is a perversion of the process"].)  As *Amtower* observed, "The disadvantages of such shortcuts are obvious.  They circumvent procedural protections provided by the statutory motions or by trial on the merits; they risk blindsiding the nonmoving party; and, in some cases, they could infringe a litigant's right to a jury trial. [Citation.]  Adherence to the statutory processes would avoid all these risks. Furthermore, these irregular procedures can result in unnecessary reversals." (*Amtower*, at p. 1594.)

We conclude reversal is necessary here.  The Commission in recommending AB 237's adoption explained that the purpose of its pretrial procedures was to foster settlement.  Accordingly, "[t]here must be sufficient time for the parties to

22

examine any valuation data exchanged, focus on the nature of their dispute, and obtain judicial resolution of any irreconcilable disagreements over legal issues. Resolution of legal issues in a timely fashion will *help pave the way* for a resolution of the proceeding without the need for trial." (Recommendation*, supra*, 30 Cal. L. Revision Com. Rep. at p. 586, italics added.) Instead of pursuing that course, the Agencies seized on section 1260.040 as a purported means to short-circuit the case on liability grounds without seeking summary judgment. Applying the statute to liability in this manner does nothing to "help pave the way" towards settlement if the defendant prevails, and nothing to narrow liability issues for settlement or trial if the plaintiff prevails. As the Agencies concede in requesting that we judicially insert liability determinations into section 1260.040, subdivision (a), and apply the modified statute to inverse condemnation actions, the decision whether to do so rests in our discretion. We decline the invitation.

*Dina* further allowed the public entity defendant to utilize section 1260.040 as the basis for its motion to dismiss the plaintiffs' nuisance and negligence claims as a matter of law. In our view, to apply section 1260.040 to allow a trial court to adjudicate any companion causes of action in an inverse condemnation complaint is beyond the scope of the section and its legislative intent. Under well-established law, Plaintiffs here were entitled to a jury trial on their nuisance cause of action, absent a summary judgment motion and ruling disposing of their claims. (§ 592; *Farrell v. Ontario* (1919) 39 Cal.App. 351, 357 ["the parties here were entitled to a jury trial upon the issues as to damages" for nuisance].)

23

## III

### DISPOSITION

The judgment is reversed and the matter remanded for further proceedings not inconsistent with this opinion.  The Plaintiffs are entitled to their costs on appeal.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.

24