Filed 12/24/20 Markosyan v. Superior Court CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| HOVHANNES MARKOSYAN,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>Defendant and Respondent. | B303211<br><br>(Los Angeles County Super. Ct. No. BC706828) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elizabeth R. Feffer, Judge. Affirmed.

Hovhannes Markosyan, in pro. per., for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Nate J. Kowalski, Jorge J. Luna and Jennifer D. Cantrell for Defendant and Respondent.

* * * * * *

The local superior court terminated one of its probationary employees after he searched for his brother's pending criminal case in the court's database and wrote a letter to the judge presiding over that case emphasizing his job with the court and urging leniency. The employee subsequently sued the court, claiming that he was fired for reporting various violations of law. The trial court granted summary judgment for the superior court after concluding that the employee did not make out a prima facie case for retaliation; the court also refused to entertain the employee's requests to add new claims. We conclude there was no error, and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

#### A.    *Plaintiff's employment and promotion to Judicial Assistant*

The Los Angeles Superior Court (the Superior Court) hired Hovhannes Markosyan (plaintiff) in December 2014. On June 14, 2016, plaintiff was promoted to the position of Judicial Assistant in the main criminal courthouse in downtown Los Angeles. As part of the promotion, plaintiff was placed on probationary status for one year—that is, until June 13, 2017.[1]

#### B.    *Improper conduct*

In 2015, the People filed charges against plaintiff's brother in the Superior Court for the crime of robbery.

---

[1]     While he was a probationary Judicial Assistant, plaintiff applied for a promotion to the position of Court Operations Manager. Plaintiff was informed after the Superior Court terminated his employment that his scores from the three-part application process placed him in the second-tier of qualified applicants.

Between the time he was promoted to a probationary Judicial Assistant and June 2017, plaintiff used his access to the Superior Court's docketing system to search for his brother's case 39 times. He also searched for himself one time, and for "defendant O.J. Simpson" two times.

On August 12, 2016, plaintiff sent a letter to the trial judge presiding over his brother's still-pending case. In the first and last paragraphs of the letter, plaintiff identified himself as being a Judicial Assistant with the Superior Court. Plaintiff acknowledged that his brother had entered a "no contest" plea to the robbery charge. However, plaintiff expressed his "belief and conviction" that his brother entered that plea to avoid "losing his daughter for a longer period of time" and that the "heavy emotional and psychological burden" of possibly losing his daughter meant that the plea was not "freely and voluntarily" given. Plaintiff also maintained that his brother was "innocent" because *plaintiff* had not noticed "anything suspicious" about his brother when he saw him on the night of the robbery and because his brother did not need the money. Simultaneously and somewhat inconsistently, plaintiff also wrote that he did not want to "discredit the plea" and thus asked the judge to impose a more lenient sentence, including any "alternative to sending [his brother] to prison." At no point in the letter did plaintiff state that his brother's plea was unlawful, illegal or otherwise improper.[2]

---

[2] It was not until later that plaintiff started to assert that his brother's plea was "illegal" and that his letter was meant to bring the "illegal plea" to the trial judge's attention.

3

## C.    *Investigation*

In September 2016, the Superior Court's Labor, Equity and Performance Division (Labor Division) opened an investigation into whether plaintiff's letter violated the Code of Ethics applicable to court employees.  As part of its investigation, the Labor Division asked the Superior Court's Internal Affairs Department to audit plaintiff's use of the Superior Court's docketing system to determine whether plaintiff had used his access in an unauthorized manner.

The Code of Ethics applicable to Superior Court employees prohibits the "misuse of court . . . facilities for personal business," obligates employees to "[s]afeguard confidential information," and prohibits them from "using [their] position at [the] court to benefit self, friends, or relatives."  The Guidelines that interpret the Code of Ethics more specifically prohibit employees from "us[ing]" the "special access" of their position "for personal gain" or to "facilitate a favorable disposition to a case, or provide access to confidential case information to benefit self, friends, or family members."  Along similar lines, the Superior Court's personnel policy governing Internet, E-Mail, Telephone and Other Electronic Communications Systems prohibits employees from "improperly us[ing]" the court's "confidential and proprietary information" and from "[u]sing the Court's electronic . . . systems for personal gain."  Plaintiff acknowledged that he was aware of—and familiar with—the Code of Ethics and Internet policy, although once litigation began he denied that his signature on the forms acknowledging his receipt of physical copies of these policies was authentic.

On June 1, 2017, the Labor Division interviewed plaintiff about the results of its investigation.  With regard to the letter,

4

plaintiff told the investigators that "the purpose of [his] letter was to inform the Judge of [his brother's] illegal plea." With regard to accessing the court's docketing system to look up his brother, himself, and O.J. Simpson, plaintiff first denied doing so, then later said he did not recall doing it or recall doing it so many times. When the investigators confronted plaintiff with his inconsistent answers, he walked out of the interview.

### D. *Plaintiff's termination*

On June 8, 2017, the Superior Court released plaintiff from his probationary position as a Judicial Assistant, effectively terminating his employment.

### E. *Plaintiff's pre-termination complaints*

While he served as a Judicial Assistant on probation, plaintiff "floated" to different courtrooms on an as-needed basis. During this time, plaintiff reported three violations of law he witnessed to his superiors at the Superior Court—namely, (1) he reported to the Court Operations Manager, Court Administrator, and the Senior Judicial Assistant that he was being required to work through part of his 90-minute lunch break, (2) he reported to "the entire management" that he was being required to work overtime without pay, and (3) he reported that criminal defendants who were charged with both felonies and misdemeanors were sometimes being held pending trial longer than the maximum sentence permitted for a misdemeanor.[3]

---

[3] Plaintiff also filed a retaliation complaint with the Superior Court three or four months *after* he was terminated, so that claim cannot be the basis for his termination. Although plaintiff stated in a declaration opposing the Superior Court's summary judgment motion that he filed the claim on June 5, 2017 (that is, before he was terminated), we disregard this statement because it is inconsistent with his prior deposition testimony. (E.g.,

Although plaintiff conceded that he suffered no "negative action" from reporting the third alleged violation, he suspected that he was being punished for reporting the first two alleged violations because, after his reports, he was floated into courtrooms with high-volume misdemeanor calendars rather than being floated into a felony courtroom.

However, plaintiff was ultimately floated into a courtroom that he liked and was invited by the judge to stay.

## II. Procedural Background

### A. *Pleadings*

In May 2018, plaintiff sued the Superior Court. In the operative first amended complaint, plaintiff brought a claim for retaliatory termination in violation of Labor Code section 1102.5.[4]

### B. *Summary judgment*

In August 2019, the Superior Court moved for summary judgment or summary adjudication of plaintiff's retaliation claim. After plaintiff filed an oversized opposition brief without leave of

---

*Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 473 [courts "should" "disregard[]" "a party's self-serving declarations" when they "contradict" his earlier "discovery admissions"]; *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 459-460 [a trial court may "disregard a party's declaration or affidavit . . . where it and the party's deposition testimony or discovery responses are 'contradictory and mutually exclusive'"].)

4      Plaintiff also brought a claim for intentional infliction of emotional distress, but abandoned it by failing to amend his complaint after the trial court sustained a demurrer to that claim with leave to amend.

All further statutory references are to the Labor Code unless otherwise indicated.

court, after the Superior Court filed its reply brief, and after a hearing in mid-November 2019, the trial court granted the Superior Court's motion because plaintiff could not "establish a prima facie" case of retaliation.

### C.    *Leave to amend*

While the Superior Court's motion for summary judgment was pending, plaintiff made efforts to seek leave to file a second amended complaint that would allege two additional claims for breach of contract and wrongful termination in violation of public policy.  Initially, plaintiff filed an ex parte application for leave to file his proposed second amended complaint.  The trial court denied the application on the ground that the request must be made in a noticed motion.  Plaintiff then filed a noticed motion for leave to file his proposed second amended complaint, and the motion was calendared for January 2020.  Because the January 2020 date was *after* the mid-November 2019 date set for the hearing on the Superior Court's pending summary judgment motion, plaintiff filed an ex parte application to advance the date of the January 2020 hearing.  The trial court denied the application, which left plaintiff's motion on calendar for January 2020.

When the trial court granted summary judgment for the Superior Court in mid-November 2019, it vacated the January 2020 hearing date for plaintiff's motion for leave to file a second amended complaint.  Plaintiff did not object, either at the hearing or thereafter.

### D.    *Judgment and appeal*

Following entry of judgment in December 2019, plaintiff filed this timely appeal.

7

**DISCUSSION**

Plaintiff argues that the trial court erred in (1) summarily adjudicating his retaliation claim, and (2) not allowing him to file his second amended complaint.

## I.     Summary Judgment of Retaliation Action

### A.     *The law, generally*

Among other things, California law prohibits an employer from "retaliat[ing]" against an employee because the employee "disclos[ed] information" to his employer, if the employee has "reasonable cause to believe that the information discloses a violation of state or federal statute."  (§ 1102.5, subd. (b); *id.*, subd. (e) [for public employees, disclosing to employer is enough].)

To "'sharpen[] the inquiry into the elusive factual question[s]'" that predominate employment cases (*St. Mary's Honor Ctr. v. Hicks* (1993) 509 U.S. 502, 506), the United States Supreme Court developed a three-step, burden-shifting mechanism in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, that also governs whistleblowing claims under section 1102.5 (*Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1453 (*Akers*); *Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1108-1109; *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 138 (*Mokler*); *Bareno v. San Diego Community College Dist.* (2017) 7 Cal.App.5th 546, 560 (*Bareno*)). The plaintiff bears the initial burden of producing evidence establishing a prima facie case of retaliation, which requires proof that (1) the plaintiff engaged in a protected activity, (2) his employer subjected him to adverse employment action, and (3) there is a causal link between the two.  (*Manavian v. Department of Justice* (2018) 28 Cal.App.5th 1127, 1141; *Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1384

8

(*Patten*).) If the plaintiff makes this prima facie showing, then the employer-defendant has the burden of producing evidence indicating that it had "a legitimate, nonretaliatory reason" for its treatment of the plaintiff. (*Bareno*, at p. 560; *Akers*, at 1453; *Mokler*, at p. 138.) If the defendant carries this burden, then the plaintiff bears the ultimate burden of proving that the employer's reasons are "merely . . . pretext." (*Mokler*, at p. 138; *Bareno*, at p. 560; *Akers*, at 1453.)

This burden-shifting mechanism works differently where, as here, a court is evaluating a motion for summary judgment. (*Serri v. Santa Clara University* (2014) 226 Cal.App4th 830, 861.) Summary judgment functions to separate the cases worth "'the time and cost of factfinding by trial'" from those that are not by sussing out whether there are any triable issues of material fact for a jury to consider. (*Id.* at pp. 859-860.) Consistent with this purpose, the employer sued for retaliation—as the party seeking to avoid trial—is entitled to summary judgment only if it establishes that the undisputed facts disprove an element of the employee-plaintiff's prima facie case or prove a legitimate, nonretaliatory reason for the adverse employment action. (*Id.* at p. 861; Code Civ. Proc., § 437c, subds. (a) & (o)(2).)

We independently review a summary judgment ruling, without regard to the trial court's conclusions or its reasons. (*Burgueno v. Regents of University of California* (2015) 243 Cal.App.4th 1052, 1057; *Ryder v. Lightstorm Entertainment, Inc.* (2016) 246 Cal.App.4th 1064, 1072.) We evaluate the issues framed by the pleadings (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 115), consider all of the evidence before the trial court except evidence to which an objection was made and sustained (and when the ruling is not challenged on appeal (*Dina*

*v. People ex rel. Dept. of Transportation* (2007) 151 Cal.App.4th 1029, 1048 [failure to object leaves evidentiary ruling intact], overruled in part on other grounds as stated in *Weiss v. People ex rel Dept. of Transportation* (2020) 9 Cal.5th 840, 859)), liberally construe that evidence in support of the party opposing summary judgment, and resolve all doubts concerning that evidence in favor of that party. (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286; Code Civ. Proc., § 437c, subd. (c).)

In the operative pleading, plaintiff's retaliation claim rests on the allegations that he suffered adverse employment action after he engaged in four different activities: (1) sending the letter to the trial judge in his brother's case to advise the judge that his brother's plea was coerced (and hence "illegal"), (2) reporting that his lunch break was being cut short, (3) reporting that he was having to work overtime without pay, and (4) reporting that certain defendants facing felony and misdemeanor charges were being held in custody longer than the maximum sentence for the misdemeanors. As explained below, the trial court properly granted summary judgment on defendant's retaliation claim because his letter did not constitute protected activity and because his remaining conduct did not result in any adverse employment action.

**B.** ***Plaintiff cannot establish a prima facie case of retaliation***

1. *Plaintiff's letter did not constitute protected activity*

An employee-plaintiff establishes a prima facie case of retaliation only if, among other things, he proves that he "engaged in protected activity." (*Patten, supra,* 134 Cal.App.4th at p. 1384.) An employee-plaintiff engages in protected activity

10

only if he "disclose[s] information" that he believes—both (1) subjectively, and (2) reasonably—constitutes a violation of federal, state or local law. (§ 1102.5, subd. (b) [requiring "reasonable cause to believe"]; *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 87 [requiring proof that employee "report[ed] his 'reasonably based suspicions' of illegal activity"]; *Ross v. County of Riverside* (2019) 36 Cal.App.5th 580, 591 (*Ross*) [so noting].) For an employee-plaintiff's belief to be reasonable, "the employee must be able to point to some legal foundation for his suspicion—some statute, rule or regulation which may have been violated by the conduct he disclosed." (*Fitzgerald v. El Dorado County* (E.D. Cal. 2015) 94 F.Supp.3d 1155, 1172; *Ross*, at pp. 592-593 [employee-plaintiff had legal foundation for believing that prosecuting persons exonerated by DNA testing violated the law]; cf. *Carter v. Escondido Union High School Dist.* (2007) 148 Cal.App.4th 922, 933 [employee-plaintiff's disclosure that a particular coach had recommended that students take a protein shake is not actionable because there is no legal foundation for his belief that recommending shakes is unlawful].)

Here, we independently determine that the undisputed facts establish that plaintiff did not engage in protected activity with regard to his brother's plea, and we do so for two reasons.

First, plaintiff did not engage in protected activity because the letter itself did not disclose a subjective belief in a violation of the law. Although plaintiff now claims that he was blowing the whistle on his brother's coerced plea, his letter disclaimed any subjective belief that the plea was invalid; plaintiff wrote to the judge that the "purpose" of his letter was "*not* to discredit the plea," "*not* to have the cases against [his brother] dropped," and "*not . . .* [for his brother] to not serve any jail time." (See *Ferrick*

11

*v. Santa Clara University* (2014) 231 Cal.App.4th 1337, 1350-1351 [after-the-fact characterization of disclosure does not change nature of disclosure]; *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1434 [employee must convey belief "in a form which would reasonably alert" the employer of a legal violation].)

Second, even if we construe the letter's assertions that plaintiff's brother's plea was not "freely and voluntarily given" because it was the product of the "heavy emotional and psychological burden" of possibly losing custody of his daughter, the letter does not *reasonably* disclose a violation of the law. Instead, the law expressly provides that the personal pressures a criminal defendant faces when deciding to enter a plea—including, as is the case here, the possible loss of custody of one's child—do *not* render that plea involuntary or otherwise unlawful. (*People v. Valdez* (1995) 33 Cal.App.4th 1633, 1636, 1640 [so holding]; see also *People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208 ["family pressure[]" to enter plea does not render plea involuntary]; *People v. Mills* (1937) 22 Cal.App.2d 725, 726-727 [worry about personal and business "financial matters" does not render plea involuntary].) Thus, it was not objectively reasonable for plaintiff to believe (if he did) that his brother's plea violated the law. (Accord, *TRW, Inc. v. Superior Court* (1994) 25 Cal.App.4th 1834, 1853-1854 [anti-retaliation protections do not apply when employee reports denial of attorney during administrative interview, which is not unconstitutional]; *DeSoto v. Yellow Freight Systems, Inc.* (9th Cir. 1992) 957 F.2d 655, 658-659 [California's anti-retaliation protections do not apply when employee reports operation of trailers without registration papers, which does not implicate "fundamental public policy"]; cf.

*Ross*, *supra*, 36 Cal.App.5th at pp. 592-593 [employee-plaintiff had legal foundation for believing that prosecuting persons exonerated by DNA testing violated the law].) This is true, even if, as plaintiff later asserted in his deposition, his brother's prosecutor or defense counsel were the ones who may have pointed out the consequences of the plea when advising him. (*People v. Urfer* (1979) 94 Cal.App.3d 887, 892 [fact that a lawyer points out advice a defendant is reluctant to hear does not render a plea involuntary]; *People v. Knight* (1987) 194 Cal.App.3d 337, 344 [same]; see generally *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69, 70 [employer must be aware of protected activity].)

        2.     *Plaintiff did not suffer an adverse employment action for reporting short breaks, unpaid overtime, or criminal defendants' time in custody*

An employee-plaintiff establishes a prima facie case of retaliation only if, among other things, he proves that the protected activity in which he engaged resulted in an "adverse employment action." (*Patten*, *supra*, 134 Cal.App.4th at p. 1384.) An "adverse employment action" is an action by the employer that "materially" and "adverse[ly]" "affects the terms and conditions of employment." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1036, 1050-1061 (*Yanowitz*); *Patten*, at p. 1387.) It includes not only a decision to fire, demote or refusal to promote an employee, but also other actions "reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his . . . career." (*Yanowitz*, at p. 1054.) However, the requirement that the adverse action be "material" means that "[adverse] employment actions" do *not* reach actions that merely "upset" or "'humiliate'" the employee or "are not to [his] liking." (*Ibid.*; *Akers*, *supra*, 95 Cal.App.4th at p.

13

1455; *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 393.)

The undisputed facts establish that the Superior Court did not take any adverse employment actions against plaintiff in response to his reports that (1) his lunch break was too short, (2) he was working overtime without pay, or (3) criminal defendants accused of both felonies and misdemeanors were serving more time in jail than permitted for a misdemeanor.  Plaintiff freely admitted that he suffered no "negative action"—and hence no adverse employment action—for reporting the allegedly over-long detention of defendants charged with felonies and misdemeanors. The sole adverse action plaintiff alleges that he suffered for reporting his shortened lunch breaks and unpaid overtime was being "floated" into courtrooms he considered to be undesirable because they were higher-volume misdemeanor courtrooms.  But plaintiff presented no evidence that floating into these courtrooms—rather than the felony courtrooms he evidently preferred—either affected his job performance or his future opportunities.  If anything, the undisputed evidence shows that these assignments did not harm plaintiff's opportunities for advancement with the Superior Court because he admitted ending up with a temporary assignment he liked and wished to make permanent.  At most, the evidence showed that the sole adverse action plaintiff suffered was a temporary assignment not to his liking.  As explained above, this does not constitute an adverse employment action.  (*Akers, supra,* 95 Cal.App.4th at p. 1455; *Yanowitz, supra,* 36 Cal.4th at p. 1055, fn. 15 [a transfer

14

that is not "disadvantageous" is not an "adverse employment action"].)[5]

## II.  Failure to Amend to Add New Claims

A party may seek to amend his complaint in connection with opposing a summary judgment motion (*Soderberg v. McKinney* (1996) 44 Cal.App.4th 1760, 1773), and the policy of great liberality in permitting amendments at any stage of the proceeding generally dictates that the trial court should exercise its discretion to allow such an amendment.  (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280 (*Falcon*); *Magpali v. Farmers Group* (1996) 48 Cal.App.4th 471, 487 (*Magpali*).)  However, the court does not abuse its discretion in denying leave to amend if the claims to be added to the complaint are unviable as a matter of law.  (*Komorsky v. Farmers Ins. Exchange* (2019) 33 Cal.App.5th 960, 971; *Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 746.)

As a threshold matter, plaintiff never asked the trial court to rule on his request for leave to amend.  His request was calendared for January 2020, but he did not object when the

---

[5]  Although plaintiff alleged that he was denied a promotion to the position of Court Operations Manager as a consequence of sending his letter to the trial judge in his brother's case, he did not allege that he was denied a promotion due to any of his other reports.  Because we must accept the case as plaintiff chose to plead it, we cannot consider the alleged denial of a promotion in relation to these other reports and thus do not need to reach whether that denial was causally linked to his reports of shortened lunch breaks or unpaid overtime.  Even if we did, however, summary judgment is still appropriate because plaintiff did not introduce any evidence of causation; indeed, plaintiff did not even allege *when* he made the reports vis-à-vis his application.

15

court took it off calendar. Because the court never actually ruled on the merits of his request, we have no ruling on the merits to review. (E.g., *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 371 [issue is forfeited on appeal where, as here, "there is simply no ruling for this court to review"].)

Even if we disregard this forfeiture, the trial court did not abuse its discretion in denying plaintiff leave to amend because neither of the two claims plaintiff sought to add—namely, breach of contract and wrongful termination in violation of public policy—is legally viable against the Superior Court.

Plaintiff's proposed claim for breach of contract is not viable because employment by a public entity is not governed by contract (*Miller v. State of California* (1977) 18 Cal.3d 808, 813-814; *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 23-24; *Kim v. Regents of University of California* (2000) 80 Cal.App.4th 160, 164), and the Superior Court is a public entity (Gov. Code, §§ 811.4, 900.3, 940.3). This settled law defeats any allegation by plaintiff that the Memorandum of Understanding (MOU) applicable to judicial assistants could support a breach of contract claim. Even if we ignore this law, the MOU does not help plaintiff because (1) his proposed breach of contract claim does not rest on the MOU, and (2) the MOU's provisions for discipline and discharge of employees does not apply to plaintiff's probationary position.[6]

---

[6] What is more, the trial court would not have abused its discretion in denying plaintiff's request to add a breach of contract claim because his request was untimely. (*Falcon, supra,* 224 Cal.App.4th at p. 1280 [no abuse of discretion where amendment offered after long unexplained delay]; *Magpali, supra,* 48 Cal.App.4th at p. 486-487 [same]; *Yee v. Mobilehome Park Rental Review Bd.* (1998) 62 Cal.App.4th 1409, 1428-1429.)

Plaintiff's proposed claim for wrongful termination in violation of public policy is also not viable because it is a tort for which a public entity like the Superior Court is immune. (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 900; *Lloyd v. County of Los Angeles* (2009) 172 Cal.App.4th 320, 329-330; Gov. Code, § 815, subd. (a).)

## DISPOSITION

The judgment is affirmed.  The Superior Court is entitled to its costs, if any, on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST

---

The Superior Court produced the MOU in discovery in February 2019 and plaintiff waited until October 2019, after the Superior Court filed its summary judgment motion, to try to add the contract claim.

17